(64 South. 795.)

No. 19,909.

HAUCH v. BONNABEL.

(Feb. 16, 1914. Rehearing Denied March 30, 1914.)

*(Syllabus by the Court.)*

BROKERS (§ 84*)—ACTION FOR COMMISSION—EVIDENCE.

In a suit for commissions on a sale of real estate, which was never consummated, the burden of proof is on the plaintiff to show that a definite offer to sell was made by the defendant, and was accepted, as made, by the prospective purchaser, and that the defendant subsequently, without just reason, refused to transfer the property.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 104, 105; Dec. Dig. § 84.*]

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; Prentice E. Edrington, Judge.

Action by Arthur Hauch against A. Bonnabel. Judgment for plaintiff, and defendant appeals. Reversed, and suit dismissed.

Robert J. Perkins, and Carroll, Henderson & Carroll, all of New Orleans, for appellant. J. F. Pierson, L. H. Marrero, Jr., and T. M. Gill, all of New Orleans, for appellee.

LAND, J. This suit was instituted in November, 1905, to recover the sum of $7,500, commissions for alleged services for procuring a purchaser for about 2,000 arpents of land belonging to the defendant. The original agreement signed by the defendant, and attached to the petition, bears date November 18, 1904, and as far as necessary to quote reads as follows:

"I herewith authorize Arthur Hauch, of New Orleans, La., to sell my property, about 2,000 acres, more or less, with all improvement, arpents or French measurement arpent, more or less, for the price of $75 per arpent, including all improvements; also 10 tenements now rented. Fine orchard and about 1,500 Louisiana pecan trees, about 800 arpents in cultivation; the balance is mostly cypress virgin forest. Commission for furnishing a purchaser is 5 per cent., subject to a change in price in case the property is going up."

Plaintiff alleged that the defendant stated that he did not care to have the price paid in cash, but preferred 8 per cent. interest; whereupon the plaintiff suggested that under custom and usage a portion of the price should be paid in cash, and that thereupon the defendant instructed plaintiff that a cash payment of $10,000 would be sufficient.

Plaintiff alleged that about December 1, 1904, he procured Leland J. Henderson, a competent and available purchaser, to whom

the defendant proposed to sell the property at $75 per arpent on a cash payment of $10,-000, and his notes at 8 per cent. interest for the balance of the purchase price; and further alleged as follows:

"That said Henderson was then willing to accept said proposition, and, with the view to accept the same, requested said Bonnabel to reduce said proposition to writing. That said Bonnabel then and there agreed to put said proposition in writing as soon as he could see his lawyer and have him to draw up the said proposition in proper legal form, and which said Bonnabel then and there agreed to do as soon as he could see his lawyer, who was not then present."

Plaintiff alleged that "thereby" he procured a competent and available purchaser for said property, and earned his stipulated commission of 5 per cent. on the total purchase price.

The plaintiff further alleged that Bonnabel refused to carry out his agreement with Henderson, and that the latter during December, 1904, and January and February, 1905, made repeated efforts in vain to have the said Bonnabel carry his proposition into effect, and reduced to writing in proper form, at the same time tendering a full performance on his part. The plaintiff further alleged that the said Henderson offered, as a further inducement, to pay $17,500, instead of $10,-000, in cash, and offered to buy the property with R. McWilliams as joint purchaser, and other overtures, all of which the said Bonnabel refused.

Plaintiff further alleged that about April 29, 1905, the defendant, through his attorney, endeavored to revoke plaintiff's authority under the agreement of November 18, 1904, by writing him not to make any more attempts to find a purchaser for his property under the letter of November 18, 1904, and that the authority given under the same was revoked.

Defendant first filed an exception of no cause of action, which was referred to the merits.

Defendant further excepted that the petition did not disclose whether the alleged contract between the defendant and Henderson and McWilliams was written or verbal, and prayed that the plaintiff be ordered to amend his petition by alleging whether the contract was verbal or written, and, if in writing, to produce and file the same.

Reserving the benefit of this exception, the defendant answered, first, by denying all allegations of the petition, except such as might be thereinafter specially admitted. Defendant, further answering, admitted the execution of the agreement of November 18, 1904, and averred that some time in February, 1905, Leland J. Henderson asked him to sign an agreement fixing the terms and conditions of the proposed sale, but that respondent declined to do so, and referred the said Henderson to his attorney, Robert J. Perkins. The respondent further averred that about February 20, 1905, the said Henderson and R. McWilliams presented to his said attorney a proposed agreement for defendant to sign, and were informed by him that here were certain objectionable stipulations in the instrument, which he would advise the defendant not to accept.

The respondent further avers that he authorized his attorney to communicate with Henderson and McWilliams, and offer to sell the property at the price named under the Hauch authority upon the payment of one-third cash, with the usual clauses, and that respondent's attorney continued to treat with the said parties until the latter part of March, 1905, when negotiations were broken off.

Respondent further averred thereafter that negotiations were resumed, and various propositions were made, and that finally Henderson and McWilliams declared that they were unable to raise the money, and declared that the deal was off.

Respondent further averred that no sale

was made, that no terms were agreed to, that no tender was made, that no commission has been earned; and denied that the property embraced 2,000 arpents; and averred that he did not know its total area.

There was judgment in favor of the plaintiff as prayed for, and the defendant has appealed.

The plaintiff and Henderson were real estate brokers, and had an agreement to divide the commissions on the contemplated sale. R. McWilliams, another real estate broker, was taken in as an associate, under an agreement that he was to receive one-third of the total commissions. After November 24, 1904, Hauch appeared with his associates in the negotiations for the sale of the property.

Mr. Henderson deposed that Bonnabel made a verbal agreement to sell the land for $75 per arpent, the area to be determined by survey; $10,000 was to be paid in cash at the time of the transfer of the deed; the remainder was to be paid on as long terms as Henderson desired, so long as he paid interest thereon annually. Mr. Henderson further deposed as follows:

"I was willing to purchase the property as specified, and requested Mr. Bonnabel to reduce his proposition in writing." "Mr. Bonnabel replied to my request that he would go to New Orleans in a few days, and his lawyer make the writing for him."

According to Henderson's deposition, the agreement was never reduced to writing, and subsequently he made propositions to purchase the property on different terms, all of which were declined by Bonnabel.

Hauch, the plaintiff, testified that the instrument sued on was written by himself, and was signed by Bonnabel, and subsequently volunteered the statement that Bonnabel dictated the contract. Counsel for defendant objected to parol evidence to add to, change, alter, or amend the contract; but the court ruled that the objections went to the effect. Counsel for defendant excepted to this rul-

ing, and it may be here stated that similar objections to parol evidence were made throughout the trial, and were disposed of in the same manner.

Hauch proceeded to testify in substance that Bonnabel said that he wanted no cash; would sooner have interest on the notes; would sell on long time to suit the buyer, the notes to bear 8 per cent. interest to be paid annually; and that, when he suggested that a cash payment was customary, Bonnabel said that $10,000 was sufficient. Hauch further testified that he found a purchaser on said terms in Leland J. Henderson, but subsequently qualified this statement by the declaration that the only agreement reached was that he was to show Henderson the place, so that he could inspect it with a view of buying it.

Hauch further testified that on November 24, 1904, after he and Henderson had inspected the property, they met Bonnabel, who finally reached an agreement with Henderson, as follows:

"Mr. Bonnabel said, 'I will sell you the 2,000 arpents, or as many arpents what it will be after the survey is made, at $75 an arpent and $10,000 cash, and the balance on long time to suit yourself, and the interest to be 8 per cent., and the interest to be paid annually.' And Mr. Henderson accepted the proposition, and he said, 'We make the terms one, two, three, four and five years;' and Mr. Bonnabel agreed to that. And Mr. Henderson said that he wanted the agreement in writing, so there won't be no delay, and Mr. Bonnabel said, 'I want to have the agreement correct, and I will get my lawyer to write it.' He did not say who his lawyer was. He said, 'My lawyer is up in Carrollton, and I will go up to Carrollton this evening or to-morrow morning and have him write it, and bring it to the Hibernia Bank Building and have Mr. Henderson accept it.'"

Henderson, in his depositions, gives his version of the alleged verbal agreement as follows:

"Mr. Bonnabel and myself then discussed terms and price, and he agreed to the following: The price he would sell the land for was $75 per arpent, the area to be determined by survey. $10,000 was to be paid cash at the time of the transfer of the deed; the remainder was

to be paid on as long terms as I desired, so long as I paid interest annually. These conditions were the same as given me by Mr. Hauch some days before I went on the premises."

"I was willing to purchase the property as specified, and requested Mr. Bonnabel to reduce his proposition to writing." "I am not sure that I stated to Mr. Bonnabel my reason for requesting him to reduce his proposition to writing." "Mr. Bonnabel replied to my request that he would go to New Orleans in a few days, and have his lawyer make the writing for him."

Henderson further testified that Bonnabel never did comply with his promise to have the agreement reduced to writing, and that subsequently he and his associates made offers to buy the property on different terms.

Henderson did not testify that he accepted the verbal offer made by Bonnabel, or that the credit terms were agreed upon, as testified by Hauch, and Henderson's statement supra excludes both suppositions. Henderson, a real estate broker, must have known that a verbal agreement to sell real estate could not be enforced, and therefore requested that the offer be reduced to writing.

Subsequently D. McWilliams and Leland J. Henderson submitted to the attorney of the defendant a written option for the sale of the property to be signed by the defendant. The instrument contained a number of blanks to be filled in, notably as to terms of credit, and also stipulated as to extension of notes and release of the mortgage on parts of the property as sold by the prospective purchasers. The attorney declined to advise the defendant to sign such an agreement.

Henderson afterwards made a number of offers to secure an option on the property.

The defendant, in his deposition, contradicts the versions of both Hauch and Henderson as to what took place in the interview between the three. Defendant testified that after some talk he referred both of them to his attorney.

That no offer was made and accepted on the occasion of said interview is shown by the subsequent action of Henderson and their associates in endeavoring to secure options on the property. Henderson testified that he was *willing* to accept the alleged offer of Bonnabel, but does not swear that he *accepted* the offer when made.

According to Henderson's version, Bonnabel failed to comply with his promise to see his lawyer, and to have the agreement reduced to writing, and then referred Henderson to Mr. Perkins, his attorney; whereupon Henderson and McWilliams called on Mr. Perkins and entered into negotiations for the purchase of the property.

Hauch and Henderson differ materially as to the terms and conditions of the alleged offer, and the testimony of both of them cannot be true, Bonnabel denies that he made any offer, but swears that he referred Henderson to his attorney. McWilliams testifies that some time after November 24, 1904, Hauch and Henderson had a considerable discussion with Bonnabel out of his hearing, and that Henderson came up and said that it was all satisfactory, but Mr. Bonnabel wished to consult his attorney before he signed anything.

If there was a definitive offer and acceptance on November 24, 1904, why these subsequent interviews, negotiations, and efforts to arrive at an understanding between the parties?

In our opinion the evidence is insufficient to show that on November 24, 1904, Bonnabel agreed to sell and Henderson agreed to buy the property in question.

The subsequent actions of Henderson, Hauch, and Bonnabel show that no such agreement was reached.

It is therefore ordered that the judgment below be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff's suit be dismissed, with costs.

PROVOSTY, J., absent on account of illness, takes no part.