(100 South. 62)

No. 24383.

**GRACE REALTY CO. v. PEYTAVIN PLANT-ING CO., Inc., et al.**

(March 31, 1924. Rehearing Denied by Division C May 5, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Brokers** ⬅⮞57(2)—**Broker entitled to proportion of agreed commission where principal himself has consummated transaction for less than price fixed.**

Where broker employed to sell property at given price for agreed commission has opened negotiations with purchaser, and principal, without termination of agency or negotiations so commenced, concludes sale for less sum than price fixed, broker is entitled to ratable proportion of agreed commission.

2. **Brokers** ⬅⮞56(3)—**Purchaser could not terminate relations and protect vendor.**

As prospective purchaser with whom broker was negotiating had nothing to do with commissions to be paid by vendor, it was not in his power to terminate his relations with the broker just before consummation of the sale in order to protect the vendor from liability.

3. **Brokers** ⬅⮞46, 55(1), 56(3) — **Principal's right to sell without agent's intervention, stated.**

Principal may reserve right to sell property at fixed net price, and may deny broker exclusive right of sale, and in such case may sell property directly or through another agent, but cannot sell to prospective purchaser produced by agent and deprive such agent of commission, either by discharging him or by silently ignoring his rights.

Appeal from Twenty-Seventh Judicial District Court, Parish of Ascension; Philip H. Gilbert, Judge.

Action by the Grace Realty Company against the Peytavin Planting Company, Inc., and another. Judgment for plaintiff, and defendant named appeals. Affirmed.

Walter Lemann, of Donaldsonville, for appellant.

John Marks and A. N. Simmons, both of Napoleonville, for appellee.

By Division B, composed of Justices DAW-KINS, LAND, and LECHE. Justice LECHE being absent, on account of illness, Mr. Justice ROGERS, of Division A, heard the argument and took part in the decision in the following case.

LAND, J. The Grace Realty Company, a commercial and real estate partnership, composed of Charles E. Grace and Albert L. Grace, have brought this suit to recover of defendants in solido the sum of $2,400, with legal interest from November 25, 1919, un-

til paid, as a commission for the sale of the Peytavin plantation, situated in the parish of Ascension.

Plaintiffs allege that they entered into a. verbal contract with the Peytavin Planting Company, Inc., and Jacob Lebermuth on or about November 5, 1919, for the sale of this plantation for the sum of $106,800 with the movables, or for the sum of $82,400 without the movables, and that plaintiffs were to receive as their commission for their services the sum of $2,400.

Plaintiffs' demand against Jacob Lebermuth was dismissed by the lower court, as the evidence disclosed that he had no interest in this plantation, and was merely representing defendant company as agent in the sale of the place. The price of the plantation at $106,800 is also eliminated from the case, as the property was sold by defendant company for $80,000; all corn, hay and molasses on the place being included in the sale.

The defendant company offered this property at $80,000 net, reserving the right to sell, and plaintiffs were to receive a commission of $2,400 in addition to this price, or 3 per cent. on the net price. The agent's contract was not for any fixed or definite period. The sale was made to O. Robert & Bros., through the efforts of Ed. Grace and Albert L. Grace, members of plaintiff company. It is true that Jacob Lebermuth, agent of defendant company, had endeavored prior to this sale, which was effected November 25, 1919, to interest Omer ·Robert of said firm to purchase this place, but without result. These negotiations were commenced about October 10, 1919. The negotiations initiated by plaintiffs covered the period from November 5 to November 20, 1919. Through correspondence, visits, and otherwise, Omer Robert was induced by Albert Grace to make an offer of $70,000 for the property, which was declined, with the statement that the property must bring $80,-

000 net. Albert Grace, after making this: offer on the afternoon of November 20, 1919, left the residence of Lebermuth, and had; proceeded but a short distance in his automobile, when he met Omer Robert and his brother in their car. Grace reported the result of his interview to them, and offered to return with them to the residence of the agent, but they declined, and replied that they would go alone and see if they could do better. The result was that the sale was. closed for $80,000, with certain movable property included, and, without any notification whatever by defendant company to· Albert Grace, the agent, or without any opportunity whatever given to him to protect his commission by seeing his prospective purchasers before the sale. Albert Grace had not·been dismissed as agent by defendant company, nor by his prospective purchaser, before this sale; although Omer Robert has attempted to construe his statement to Grace that they would go alone to see the agent of defendant company on the afternoon of November 20, as putting an end to· the services of Grace, as far as he was concerned. But no express notice of the termination of Grace's agency was given to· him by Robert on that occasion.

[1] The state of facts, therefore, with which we have to deal, is one where the principal has sold the property, at a price purporting to be less than that originally offered, to a prospective buyer procured by the agent, while negotiations were pending between the principal and the agent, and. without any notice to the agent by the principal. It is well settled that where a broker, who is employed to sell property at a given price, and for an agreed commission, has opened negotiations with a purchaser, and the principal, without terminating the· agency or negotiations so commenced, takes. it into his own hands, and concludes a sale for a less sum than the price fixed, the bro-

ker is entitled, at least, to a ratable propor- tion of the agreed commission.

This rule is supported by numerous authorities, upon the ground that the broker is, in such a case, really the moving cause of the sale, as he has brought the parties together and thereby procured a· purchaser and performed his contract which was contingent upon his success. Hoadley. v. Savings Bank of Danbury, 71 Conn. 599, 42 Atl. 667, 44 L. R. A. 350, 351, note, citing numerous authorities.

In the case of Hovey·v. Aaron, 133 Mo. App. 573, 113 S. W. 718, it is held that—

"If defendant, while plaintiffs' authority to sell stood unrevoked, chose to sell the property, either in person or through another agent, to a customer procured by the efforts of plaintiffs, for a less price than that which plaintiffs were authorized to offer, that was his privilege, but he will not be permitted to reap the fruits of plaintiffs' labor and then deny them their just reward."

See, also, Paschall v. Gilliss, 113 Va. 643, 75 S. E. 220, Ann. Cas. 1913E, 783; Lawson v. Black Diamond Coal Min. Co., 53 Wash. 614, 102 Pac. 759; Martin v. Silliman, 53 N. Y. 615.

The decisions above quoted, when considered as a whole, are based, not only upon the principle that in such cases the agent is considered as the proximate or procuring cause of the sale, but also upon the equitable maxim that the principal shall not be permitted to enrich himself at the expense of the agent or broker, whose services have inured to his benefit.

We expressly adopted this principle into the jurisprudence of this state at an early date. In the case of Gottschalk v. Jennings, 1 La. Ann. 5, 45 Am. Dec. 70, the defendants employed plaintiff, a broker, to sell certain property. Plaintiff communicated to them the name of a person who offered to purchase, but at a price less than defendants asked. The latter rejected the offer and discharged the broker, but, shortly after,

156 LA.—4

through another agent, sold the property to the person whose name was communicated by plaintiff and for the price originally offered by him. It was held in that case that defendants could not, by discharging the plaintiff and consummating the negotiation through another, deprive him of his right of compensation for services which eventually inured to their benefit. This court said in the Gottschalk Case:

"The defendants have received an advantage from the services of Gottschalk, and they ought to pay for them. The general rule of law as to commissions is, that the whole service or duty must be performed, before the right to any commission attaches; for an agent must complete the thing required of him before he is entitled to charge for it.· But cases may occur, in which an agent may be entitled to a remuneration· for his services, in proportion to what he has done, although he has not completed the business. See Story on Agency, 338; Hammond v. Holiday 1 Carrington & Payne, 429. We consider this such a case. Here the entire performance by plaintiff was prevented *by the act of the defendants* (principals). They took the business *out of his hands*, intrusted it to others, and *soon after* the bargain with Mercer was closed." (Italics ours.)

We said in the case of Taylor v. Martin, 109 La. 137, 33 South. 112, that—

"Where no time for the continuance of a contract of brokerage is fixed, either party is at liberty to terminate it at will, subject only to *the ordinary requirements of good faith*." (Italics ours.)

We distinctly held in the Gottschalk Case that the discharge of the agent who had procured a purchaser, and the closing of the deal with the same purchaser a short time afterwards, through another agent, was an act of bad faith.

It would be equally an act of bad faith upon the part of the principal in such a case, if the sale should be made personally by him. If brokers could be legally discharged by their principals, shortly after prospective purchasers were found, and the sale could be effected· directly by such principals, or

through the medium of another agent, to the same purchaser, then Othello's occupation would be gone—there would be no more commissions collected; no more realtors. Counsel for defendant company cite the case of Ford v. Shaffer, 143 La. 635, 79 South. 172. In that case, the owner sold the property to the prospective buyer, long after the broker had tried and failed to effect a sale. It is stated in the opinion in that case that more than ten months had elapsed and that the broker did not aid at all in the transaction. Such is the purport of the decisions in Lewis v. Manson, 132 La. 817, 61 South. 835, and Hauch v. Bonnabel, 134 La. 847, 64 South. 795, upon which the Ford Case is predicated.

[2] The prospective purchaser in the case before us had nothing to do with the payment of the commissions. He was in no way bound for them, and it was not in his power to terminate his relations with plaintiffs on the very eve of the consummation of the sale, in order to protect defendant company by a discharge of the broker, against "the requirements of ordinary good faith" and the imperative demands of fair business dealing.

The defendant company itself made no attempt whatever to sever its relationship with the agent in this case before the sale was effected. If it had done so, in the very face of the sale, or shortly afterwards, it would have incurred the same liability for the commission as was imposed upon the defendant in the Gottschalk Case, cited in this opinion.

[3] It is true that a principal may reserve his right to sell his property at a fixed net price, and may deny to a broker the exclusive right of sale. The principal, in such event, may sell his property either directly or through any agent to a third person; but he cannot, in any case, dispose of the property to a prospective purchaser introduced by an agent and deprive the agent of his commission, either by discharging him shortly before or after the sale, or by silently ignoring his rights in the premises.

The principal, in order to relieve himself of liability in such a contingency, must either notify the agent of the offer and give him a reasonable time to protect his commission, or he must decline the sale. Good faith and fair methods of trade require such a course of conduct, and nothing short of this will shield a principal against the payment of the commissions of the agent, unless there is a bona fide discharge of the agent, or such length of time has elapsed as to show that the effort of the agent was not a contributing cause of the sale.

While the agent and the prospective purchaser testify that the movables, in addition to the plantation, included in the sale, were in the nature of concessions, authorized by the controlling stockholders of defendant company, we are not inclined to accept such concessions as a good reason for a diminution of the purchase price of the sale of the plantation. We regard these concessions, not in the light of actual deductions from the purchase price, but rather as "langniappe," or gratuitous additions to the sale, as said sale was made for the sum of $80,-000, the amount of the net purchase price, notwithstanding these concessions. The real less price at which the property was sold in the case was $80,000, instead of the price of $82,400, which included the agent's commission.

Judgment affirmed.

Rehearing refused by Division C, composed of Justices OVERTON, ST. PAUL, and THOMPSON.