Mrs. Marie A. Myevre, a duly licensed and bonded real estate agent, conducting her business under the trade name, Myevre Realty Company, brought this suit to recover from Mr. and Mrs. Robert C. Norton $200, with legal interest from judicial demand, as a commission for the sale of a piece of real estate in New Orleans, which was sold for $5,000 to Mrs. Ellen Reynolds, widow of Wm. V. Moran.
Plaintiff alleges that defendants authorized her to find a buyer for their property and that through her efforts Mrs. Moran was obtained as a prospect and was put into contact with defendants. She claims that since defendants sold their property to the said prospect for a price satisfactory to them, they are indebted to her for the usual commission, which she alleges is 4% on the total amount of the sale.
Defendants admit that the property in question was sold to Mrs. Moran for $5,000, but they deny that they authorized plaintiff to attempt to secure a purchaser for them, and they also deny that plaintiff was instrumental in securing Mrs. Moran as a purchaser.
There was judgment for plaintiff for $200 against Robert C. Norton, but the suit as against Mrs. Norton was dismissed. Norton has appealed and plaintiff has answered the appeal, praying that the judgment be increased by 10% as a penalty against appellants for having taken a frivolous appeal.
Mrs. Myevre testified that Norton called on her and authorized her to attempt to find a purchaser, and though Norton at first denied that he had ever discussed the matter with plaintiff, he later admitted that he had called on her, and that he understood that "if she could sell the property, I would pay her a commission * * *." Plaintiff does not contend that she had an exclusive contract with defendants nor that her contract was in writing.
The record shows that Mrs. Moran mentioned to her friend, Mrs. Blanchard, that she was interested in renting or buying "a little house" in Lakeview and that Mrs. Blanchard telephoned to Mrs. Myevre's daughter who, at the time, was in Mrs. Myevre's office as her representative, and told her that Mrs. Moran was interested in such a house, and that then Mrs. Moran called on Miss Myevre and explained to her that while she was interested in buying or renting a little house, she had no ready money available.
The record also shows that Miss Myevre telephoned to Mrs. Norton and told her that she was sending Mrs. Moran over to see her and that she could not come herself because her mother's automobile was being repaired. She also added that Mrs. Moran did not have any ready cash available. Defendants contend that Mrs. Myevre was told that she might send Mrs. Moran but that it was to be understood that no commission was to be paid. The record does not convince us that there was any such understanding that no commission was to be paid. Mrs. Moran went to see Mrs. Norton, who accompanied her to the house where she was introduced to Mr. Norton. As a result of this visit, Mrs. Moran bought the house.
Neither Mrs. Myevre nor her daughter had any part in the negotiations nor in arranging the financial matters which were involved but it is quite clear that the parties, that is Mrs. Moran, the purchaser, and the Nortons, the vendors, were introduced through the efforts of plaintiff's *Page 217 
representative, her daughter. When Mrs. Moran called on Mrs. Myevre she seems to have had with her an advertisement inserted by Mr. and Mrs. Norton themselves, through which they had attempted to find a purchaser without the aid of a real estate agent. It is conceded that plaintiff did not advertise the property, and it appears that at most she had sent or taken two earlier prospects to inspect the Norton property, though this is denied by Norton who says that she could not have done so because she did not have keys to the property.
At a time prior to the day on which Mrs. Moran was sent to see the Nortons another real estate agent had had an exclusive contract for the sale of the house but that contract had been cancelled.
So that we find the fact to be that all that Mrs. Myevre or her daughter did was to introduce Mrs. Moran to Mrs. Norton. Nevertheless it is settled that where a broker is authorized to attempt to find a purchaser for property of his principal, he is entitled to a commission when he has found and introduced to his principal a person who buys the property, and that his right to his commission is not lost by reason of the fact that all subsequent negotiations are carried on directly between the principal and the prospect whom he has produced. In Grace Realty Co. v. Peytavin Planting Co., 156 La. 93, 100 So. 62, 63, 43 A.L.R. 1096, the Supreme Court said:
"* * * It is well settled that where a broker, who is employed to sell property at a given price, and for an agreed commission, has opened negotiations with a purchaser, and the principal, without terminating the agency or negotiations so commenced, takes it into his own hands, and concludes a sale for a less sum than the price fixed, the broker is entitled, at least, to a ratable proportion of the agreed commission.
"This rule is supported by numerous authorities, upon the ground that the broker is, in such a case, really the moving cause of the sale, as he has brought the parties together and thereby procured a purchaser and performed his contract which was contingent upon his success."
In Sollie v. Peoples Bank Trust Co., La.App., 194 So. 116, 117, appears the following: "The rule prevailing generally throughout the country is well stated in 4 R.C.L. page 320, par. 58, as follows: `In many cases the question has arisen as to whether or not there has been a performance of the contract on the broker's part, where the transaction contemplated has been negotiated or closed by the principal himself. The general rule deducible from the decisions upon the question would seem to be that if there is nothing peculiar in the contract of employment it is not necessary that the broker should negotiate the sale when he has found, or procured, or if he has introduced, or given the name of, a purchaser who is able, ready, and willing to purchase the property upon the terms named by the principal, and the principal has entered into negotiations with such purchaser, and concluded a sale with him; and in such cases the broker has performed his contract, and is entitled to his commissions.'"
We have given some thought to the possibility suggested in the quotation from the Grace Realty Company case that where the broker has merely produced the purchaser and the subsequent negotiations have been carried on by the principal, possibly the amount earned by the agent should be reduced "to a ratable proportion of the agreed commission", but have concluded that the authorities do not justify such a reduction where the agent stands ready to perform any other services which may be required of him. In fact we see no reason for such reduction in such a situation. It may well be that in some cases an agent will do practically nothing to earn his commission and yet the sale will result from the fact that he has produced a person ready, willing and able to buy. It would not be safe to establish the rule that the commission should be reduced if the principal himself continues the negotiations with a prospect produced by the agent.
The record shows that 4% is the usual commission in this locality, and although it appears that Mrs. Myevre was required to perform very little work in connection with this transaction, she did do the one essential thing, she produced a purchaser ready, willing and able to buy. She was, therefore, entitled to her commission.
The trial court was correct in dismissing the suit as against Mrs. Norton since she took no part in employing the agent and since the property sold is shown to have seen community property, under the management of Mr. Norton as head and master of the community. *Page 218 
The facts do not justify the imposition of the penalty provided where a frivolous appeal is taken. The conclusion at which we have arrived was certainly not so clearly correct as to justify the belief that the appeal was frivolous.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.