This is a suit by a real estate agent for a commission. Mrs. Marie Myevre, doing business as the Myevre Realty Company, alleges that she is a qualified real estate agent and that through her efforts the defendant, Louis A. Davila, sold his property No. 414 Florida Avenue, to Ernest J. Miramon, Jr., and that, therefore, she is entitled to a commission of 5% of the selling price of $6,000 or $300 (the property actually sold for $6,500). *Page 120 
The defendant admits that Mrs. Myevre is a licensed real estate agent; that she was authorized to sell the property, but denied that she is entitled to a commission because the purchaser was not obtained through her efforts.
There was judgment below in defendant's favor dismissing plaintiff's demand and she has appealed.
It appears from the record that the defendant, Louis A. Davila, was anxious to sell his property on Florida Avenue and had employed one or two real estate agents in succession, giving them what is called an "exclusive agency contract", and that, later on, he determined to sell the property himself and, to that end, inserted an advertisement in a daily newspaper published in the City of New Orleans. Mrs. Myevre undertook to obtain an "exclusive listing" of the property but Davila would not give it to her, but he informed her that if she procured a purchaser he would pay her a commission. The difference between an "exclusive listing" and this sort of agreement is that under the former type of contract Mrs. Myevre would have been entitled to a commission no matter who sold the property, while under the latter she could only obtain a commission if she had been the procuring cause of the sale. The only difference between plaintiff and defendant as to the character of Mrs. Myevre's employment consists in the contention of defendant that Mrs. Myevre's commission was dependent upon her procuring "a bona fide written offer" acceptable to the defendant and the commission, if due at all, should be 4% instead of 5%.
The purchaser, Ernest Miramon testified that he saw Davila's advertisement and unsuccessfully attempted to see the house on Sunday, June 15th, 1941, when he could not obtain entrance because no one was at home. On the following Sunday, June 22d 1941, he says, he went to see a vacant house on Louisville Street and was informed by the next door neighbor that the keys to it could be procured from Mrs. Myevre. Miramon and his wife, who was with him, then went to the Myevre home, where apparently Mrs. Myevre's office is located. Mrs. Myevre sent her daughter with the keys to the Louisville Street property and, in the Miramon automobile, which Mrs. Myevre says was used because it was in her driveway and, therefore, more convenient, the party went to the Louisville Street house and other houses which were listed with Myevre Realty Company. Finally, according to Miramon, at his and not Miss Myevre's suggestion, they went to the Davila home. This time Mrs. Davila was home and Miramon was able to see the house. He was immediately impressed with it and after having made several other visits, made three offers, two of which were in writing, and finally an agreement to sell the property was entered into and the act of sale passed on August 14th, 1941. The consideration in the act of sale, however, for some unexplained reason, was put at $6,000, whereas the true consideration was $6,500.
Defendant contends that Mrs. Myevre's connection with the matter was incidental and that she not only did not introduce Miramon to the Davilas, but had nothing whatever to do with the negotiations subsequent to the first visit to the property when the Miramons were accompanied by plaintiff's daughter.
It is true that the Myevre agency did nothing else after having accompanied Miramon to the Davila home and that all negotiations were had without her intervention. However, Mrs. Myevre does say that she attempted to get in touch with Mr. Miramon over the telephone, on several occasions, but because Mr. Miramon's business required him to be absent from the City, she failed to contact him.
The whole question depends upon whether Mrs. Myevre was the procuring cause of the sale.
In the case of Harvey v. Winters, Orl. Appeal, No. 8723, 1 La.App. 383, decided January 5th, 1925, this Court held:
"In order to earn his commission a real estate agent, as a rule, must procure a purchaser within the time fixed in his contract. But if the owner continues the negotiations with the prospective buyer uninterruptedly after the expiration of the time fixed, and, within a few days thereafter, sells the property to the purchaser procured by the agent, he will owe the agent his commission." (Syllabus by the Court)
In Sollie v. Peoples Bank Trust Company, La.App., 194 So. 116, 118, the Supreme Court [Grace Realty Co. v. Peytavin Planting Co., 156 La. 93, 100 So. 62, 43 A.L.R. 1096] said:
"The decisions above quoted, when considered as a whole, are based, not only upon the principle that in such cases the agent is considered as the proximate or procuring cause of the sale, but also upon the equitable maxim that the principal shall *Page 121 
not be permitted to enrich himself at the expense of the agent or broker, whose services have inured to his benefit."
In a very late case decided by this Court, Myevre v. Norton,6 So.2d 215, 217, in which the present plaintiff was involved, decided on February 16th, 1942, we said:
"Nevertheless it is settled that where a broker is authorized to attempt to find a purchaser for property of his principal, he is entitled to a commission when he has found and introduced to his principal a person who buys the property, and that his right to his commission is not lost by reason of the fact that all subsequent negotiations are carried on directly between the principal and the prospect whom he has produced."
In all of the cited cases, however, the real estate agent had been in closer contact with the purchaser and had been the medium through which the purchaser was introduced to the owner of the property. In the instant case Miramon was first attracted to the property by an advertisement which Davila had placed in the newspaper. His interest may, therefore, be said to have been established before Mrs. Myevre's intervention. It will be recalled that Miramon testified that he first went to see the house on Sunday, June 15th, after having noticed Davila's advertisement, one week before he saw Mrs. Myevre, and that it was at his suggestion that the party composed of Miss Myevre, Mrs. Miramon and himself went to the Davila home, in his car, after having visited several other places which were listed with the Myevre agency and while Miss Myevre, who was her mother's representative does not entirely agree with him, we are of opinion that the evidence concerning the Myevre connection with Miramon's introduction to Davila is at least uncertain and, that therefore, she has not proven that she was the procuring cause. None of the cited cases go as far as would be necessary to allow Mrs. Myevre to recover here and we do not believe the principle should be further extended.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
 On Application for Rehearing.