In original and supplemental petitions plaintiff alleges that it is a commercial partnership licensed to, and doing a general real estate and brokerage business in Caddo Parish; that Richard E. Daniels and his wife Mrs. Marian E. Meyer Daniels, residents of Caddo Parish, listed with plaintiff for sale Lot 14, Nichols Subdivision of Shreveport, agreeing to pay the regular commission for such service; that it procured and furnished a purchaser, Henry L. Hurst and wife, who purchased the property for $6,000 cash, and that defendants owe plaintiff $300, being 5% of the sale price. Exception of misjoinder was filed by Mrs. Daniels, and it was sustained. No appeal was taken from this ruling, so she is no longer before the Court. Other exceptions and pleas were filed and disposed of by the City Court, and are not urged here. An answer was filed denying the allegations of the petition.
The case was tried on the merits in the City Court, resulting in judgment for plaintiff as prayed for, from which judgment defendant is prosecuting this appeal.
From the evidence it appears that about October 1, 1944, Mr. Leslie H. Monroe saw defendant on the property and asked him to list the property with him for sale, which he did. No written contract was signed, and plaintiff does not contend that the listing was exclusive. It appears that the price of the property was to be $6,750. Plaintiff inserted advertisements of the property on October 8 and 15, 1944. Mr. Hurst responded to the advertisements and Mr. Jeter, a member of the plaintiff partnership, took him to see the property twice. They did not close a trade. A short time later Mr. Monroe learned that defendant was negotiating with Hurst to sell him the property. He called defendant and told him Hurst was his prospect and that he expected his commission. Defendant told him that he was not going to pay any commission and that he would find a way to keep from paying. Mr. Monroe says this was at least 30 days before the sale was completed. Mr. Hurst says he and his wife saw plaintiff's advertisement of the property and went with Mr. Jeter to see it. At first he didn't want to buy it, but wanted to rent it for a year with the privilege of buying it, and applying the rent paid on the purchase price, but defendant did not want to rent it, and afterwards he decided to buy it, and he then told defendant that he had been shown the property by Mr. Jeter. Defendant and his wife both claimed they did not know anyone named Jeter. Hurst told them that he (Jeter) had advertised the property for sale.
From defendant's testimony it appears that he had been trying to sell the property since June or July. At one time Mr. Walter Hill, another real estate dealer, had an exclusive listing of the property, but failed to sell it. At that time defendant *Page 912 
had some plows, wagons, saddle horses and other livestock that was to be included in the sale. Defendant then advertised the property for sale himself, in The Shreveport Times of September 19, asking $5,800 for his equity. He owed $2,500 on the property. Then on October 2 he again advertised it, asking $5,000 for his equity. He had in the meantime sold some livestock off the place. He ran another ad October 15.
Defendant's version of the listing of the property is that he met Mr. Monroe on the property and told him that he could have all over $6,500 he could get for the property. He admits having telephone conversations with Monroe later on but denies Monroe ever told him that Hurst was his prospect, until after he had closed the deal with him. He admits however that Mr. Monroe called him before the deed was executed. He claims Mr. Harlan, who at one time considered buying the property, was the cause of him getting in touch with Hurst. He admits that Hurst told him about Jeter sometime before the deed was executed — in fact just about the time he had committed himself to a price of $4,000 for his equity, which would have been $6,500 for the property. But that deal did not go through and afterwards they made another deal for $6,000. Defendant also says Mr. Hurst assured him in no uncertain terms that he wasn't interested in dealing with any real estate broker, and wanted to assure himself that nobody had the right to sell it. In the face of this testimony it is admitted that Hurst told defendant that Mr. Jeter had shown him the property.
[1] On the whole the testimony of defendant and his wife is unsatisfactory. The judge of the city court saw and heard the witnesses testify, and he was evidently not impressed with their testimony. However, the testimony as a whole, including that of defendant and his wife, leaves no doubt that plaintiff was the procuring cause of the ultimate sale.
This is a stronger case for plaintiff than Sollie v. Peoples Bank Trust Co., La. App., 194 So. 116. There Sollie had advertised the property in the newspaper and put up a "For Sale" sign on it. The purchaser saw the ad, looked at the property, went to the records and learned the owner's name, went to see the owner and bought the property, all without the knowledge of Sollie, and without telling the owner how he knew about the property. The Court had no difficulty in reaching the conclusion that Sollie had procured the buyer.
The facts in Myevre v. Davila, La. App., 10 So.2d 119, are not the same as in the instant case, as will be seen from reading the case. The Court found no fault with the Sollie case, but found the facts to be different, in that the real estate broker had not procured the purchaser.
[2] Nor does it change the situation if the seller reduces the price in order to make the sale. Grace Realty Co. v. Peytavin Planting Co., Inc., et al., 156 La. 93, 100 So. 62, 43 A.L.R. 1096.
Down through the years, as shown by the reported cases, beginning with Gottschalk v. Jennings et al., 1 La. Ann. 5, 45 Am.Dec. 70, to the present, people have sought to reap the benefits of the efforts of real estate brokers without paying them for their work. In every case where the broker has procured the purchaser, the courts have awarded judgment. The only exceptions are cases where the broker has been unsuccessful and has abandoned efforts to make the sale, and later the owner has made a sale direct. Gamblin v. Young, La. App., 187 So. 854; Bullis Thomas v. Calvert et al.,162 La. 378, 110 So. 621; White v. Havard, La. App., 25 So.2d 108.
For the reasons assigned, the judgment appealed from is affirmed with costs. *Page 913