The defendant in this case, Edward J. Brouillette, had a home in Suburb Istrouma in the Parish of East Baton Rouge which he wanted to sell. He advertised it in the local newspapers, the advertisement stating that the price was $7900. He also posted a for-sale sign "By Owner" on the lot in front of the home. That was during the month of January, 1949.
William Warren Munson, the plaintiff, conducts a real estate business in the City of Baton Rouge. One of his agents, J. B. Myers, as early as November, 1948, had endeavored to have the defendant list the property with him but nothing resulted from that contact.
It so happened that in January, 1949, Myers had some prospective purchasers, Mr. and Mrs. M. W. Alford, who were anxious to buy a home in the same vicinity where defendant's property was situated. They had read the advertisement in the newspaper and had even called the telephone number listed in the advertisement to find out who owned the property and to make inquiries concerning it. On the morning following, that is January 26, 1949, Myers took them to that neighborhood to show them, as he states, "what property we had." He claims that he had again contacted the defendant on January 25, 1949, but that we seriously doubt, because according to his further testimony, he did not offer the property to the Alfords on January 26, until it was called to his attention, presumably by the "for-sale" sign, that it was for sale.
In the afternoon of January 26, after he had taken Mrs. Alford back home, Myers called Mrs. Brouillette over the telephone and told her that he had a prospective purchaser for the property and wanted to know if it would be agreeable to show them the house. Mrs. Brouillette agreed and in discussing the price at that time told him that they wanted $7900 net and that his commission would be whatever he obtained over that amount. Figuring on a commission of 5 per cent would have made the purchase price approximately $8300. There isn't any dispute regarding the fact that there was a valid verbal agreement entered into between them at that time. There is lot said in the testimony and in argument about the property having been "listed" with the agent but we do not think that the testimony revealed a listing agreement as that term is construed in the real estate business. However, there was a definite verbal agreement, between them, that Myers was authorized to show the property and to offer it to these particular prospects at a price which would net the Brouillettes $7900 and whatever he would get over that amount would be his commission. *Page 881 
He showed the property and the house to the Alfords and offered it to them for $8300 which price they were unwilling to pay. Further negotiations between him and the Brouillettes resulted in them reducing the net amount they wanted to the sum of $7800 and according to Myers' testimony, he would take a proportionate cut in his commission and would offer the property for $8150. There was no agreement written and signed but that is the most that ever was understood by and agreed to between them. The property was again offered to the Alfords for that price and they again declined to buy. From then on there is considerable conflict in the testimony and the only definite proof which appears before the court is that on January 28, 1949, Brouillette sold the property to the Alfords for the sum of $7800. Upon receiving that information the plaintiff filed this suit against him for a commission of $390, based on the ground that he had the property for sale and that he had procured a purchaser who was ready, willing and able to pay for the same and that nevertheless the defendant sold it from under him and deprived him of his commission of 5 per cent of $7800, or $390, which amount he seeks to recover judgment for.
There was an exception of no cause of action filed which was referred to the merits and now seems to have been abandoned. The defendant then answered and admitted to a great extent all of the facts which have been more or less detailed up to the time where the testimony becomes conflicting but specifically avers, in defense to the suit, that plaintiff's agent, Myers, having become unable to get the prospective purchasers to pay the price of $8150, called him and told him that the deal was off as the Alfords were no longer interested in the house. He then denies that he at any time entered into a contract with plaintiff or any of his representatives but the principal defense is that he only sold the house after the plaintiff, through his representative, had notified him that the deal was off, as far as he was concerned.
After hearing the testimony, the trial judge rendered a written opinion on which he based his conclusion that the plaintiff could not recover principally on the ground that the agent had abandoned his efforts to interest his clients in the purchase of the property at the figure he had in mind and he accordingly rendered judgment dismissing the suit. Plaintiff has taken this appeal.
If the trial judge was correct in the conclusion he reached, after hearing the testimony and appraising it, that Myers had called Mrs. Brouillette and told her, as she testified, that he could not get the prospective purchasers to pay $8150 for the property, and that he "washed his hands of the deal", we are of the opinion that that constituted an abandonment of further efforts on his part to try to sell the property and released the defendant from any obligation he may have incurred under the agreement that existed between them.
It strikes us that from the very beginning, the plaintiff's representative undertook a rather hard task in trying to sell a property for $8300, or for $8150, which had been publicly advertised for sale for $7900 by the owner himself. His task was all the more difficult in this case because his own clients knew that it was being advertised and in fact had inquired about it from the owner before he got permission to show it to them. Naturally he was unable to get them to pay a higher price than the advertised sale price, which he had to do in order to get his commission and, according to some of the testimony found in the record, he abandoned his efforts to do so and so notified the defendant.
Myers denies this, and there appears the conflict in the testimony on this important point in the case. The trial judge seems to have had but little doubt however and if he had any, resolved it in favor of the defendant. To do so, he had to rely almost entirely on the testimony of Mrs. Brouillette who testified that she was the one that had the telephone conversation with Myers as her husband was not at home at the moment. Mrs. Brouillette in detailing what happened says that after Mr. Myers had taken them to their home, the Alfords came back and Mrs. Alford asked if she would mind them looking over the house before making a decision. At that visit, *Page 882 
nothing was said by any of them about Mr. Myers nor was his name ever mentioned. When her husband returned at noon she told him that the Alfords had been to see the house without Mr. Myers. About 1:30 that day, after having talked to her husband and after he had returned to work, she called up Mr. Myers' office. He wasn't in right then but called her back in about an hour's time. She asked him if Mr. and Mrs. Alford, had bought the house and he told her no, that he had just been to their place, that he had done everything so that they could buy the house, having deducted part of his commission and then she says he told her that he "washed his hands of the case with Mr. and Mrs. Alford, and that he might meet some future clients, and that he would contact me as he did before." She is very positive in saying that he used the exact words that he "washed his hands of the Alfords". We can hardly construe that expression in any other way than to mean that he was through with trying to sell the property to the Alfords and was no longer interested in what was done with the property as far as they were concerned. Whilst it is true that he intimated that he might get some future clients who would be interested in the property, there is nothing to indicate that Mrs. Brouillette agreed to anything like that. The only agreement he ever had with the Brouillettes was that he could show and offer their property to the particular prospects he had at the time, meaning the Alfords, and that, in our opinion, was far from constituting a "listing" of the property with him which his counsel now insists that he had.
Counsel for plaintiff places great reliance on the case of Grace Realty Co. v. Peytavin Planting Co., Inc., 156 La. 93, 94, 100 So. 62, 43 A.L.R. 1096 and whilst it is true that in that case the contract or agreement between the owner of the property and the real-estate agent was pretty much in the same form as the agreement in this case, it is distinctly shown in that case that the agent never had any intimation even, given by the principal, that his services or his relations between them would be terminated. Here it is not a case of the principal having given any such notice but it was the agent who himself abandoned all negotiations and told the principal that he washed his hands of the whole deal as far as the prospects he then had were concerned. In the cited case the court stresses the point of bad faith on the part of the principal and that is no doubt an element which should enter into consideration in deciding a case like this. There is no question of good or bad faith in this case however, as it was only after the agent had notified the principal that he, in effect, was no longer interested in the deal, that plaintiffs took it upon themselves to sell the property not for the price which they originally had in mind, but for $100 less, in their effort to give him a chance to sell it and make a commission. We are inclined to agree with the trial judge that this is a case where the agent impeded the sale rather than facilitated it and therefore he is not entitled to recover.
For the reasons stated, the judgment appealed from is affirmed.