GLADNEY, Judge.
This is a suit by W. E. Dew, a relator in the City of Shreveport, Louisiana, to recover a commission alleged to be due him on the price of sale of a lot with improvements thereon. The action is defended on the ground that the purchase was not induced by plaintiff or his agents and that the deal was entirely consummated through defendant’s own efforts without the aid or assistance of plaintiff.
After trial of the case judgment was rendered in favor of plaintiff and defendant has appealed to this court.
Prior to trial an exception of no cause or right of action was argued and overruled by the court. The exception is not urged on appeal and is considered as. abandoned.
The record shows that on February 12, 1952, defendant orally listed his property described as Lot 7 of the Pierre Mont Park Subdivision in the City of Shreveport, and the dwelling thereon situated, for sale for $30,000, agreeing to pay the stipulated real estate commission of five per cent on the first $10,000 of the sale price, plus two and one-half per cent on the balance thereof. At the time of the understanding defendant turned over to plaintiff a key to the premises to facilitate the showing of the property. The listing was an open one, — that is, plaintiff did not have the exclusive right to sell the property and, in fact, other real estate *401 agents were endeavoring to do so at the time.
Plaintiff advertised the house as for sale in a local newspaper on February 4, 1952, March 2, 1952 and March 4, 1952. On Friday, February 29, 1952, a Mrs. Scott contacted plaintiff’s office, stating that she desired to see a certain house bearing municipal number 4747 Crescent Drive, and during the conversation an appointment was made which Mrs. Scott personally did not keep, but sent her brother to act for her. Mr. D. D. Shelby, representative of plaintiff, took Mrs. Scott’s brother to see several houses including the defendant’s house. During their trip Mrs. Scott’s brother gave Shelby his sister’s telephone number and later Shelby called Mrs. Scott, making an appointment with her for the following morning, Saturday, March 1, 1952, at which time Shelby exhibited to her defendant’s property. Mrs. Scott appeared satisfied with the house.
Saturday afternoon Mrs. Scott’s fiance, Matthew J. Carbone, who had been away, arrived in Shreveport. Mrs. Scott and Mr. Carbone inspected the property Saturday night after Mr. Carbone had telephoned to defendant and secured from him a key. An agreement upon terms between defendant and Carbone was had the next morning and the sale was consummated Monday, March 3, 1952 for $29,060. Neither of the parties personally contacted plaintiff or his agent, Shelby, between Saturday and Monday, the day on which the act of sale was passed. Defendant denies that Dew or Shelby had any connection with the sale and denies also that he had any knowledge that Shelby showed the house to Mrs. Scott. However, Mr. Carbone gave the following testimony when interrogated by counsel for defendant:
“Q. Do you recall me asking you and Mr. Hunter in my office when you closed the sale of the house if a real estate man had shown the property, or if a real estate broker was involved? A. I think you did ask me that.
“Q. And you told me what? A. That someone had shown it but ■ I didn’t remember who it was. I still wouldn’t know the man’s name if I hadn’t heard it in court.”
■ It is-not disputed that within a very.short time after the sale was consummated Mrs. Scott and Mr. Carbone were married and began to live in the home so purchased. .
The defense in this case is that Mrs. Scott acted in the matter without any authority from the purchaser, her fiance; that the purchaser was not procured by plaintiff or his agent, and that the transaction was wholly consummated between the purchaser and defendant.
We are of the opinion that defendant erred in assuming plaintiff’s office had no connection with the sale and was not the procuring cause thereof. Manifestly, if Shelby had not shown the premises to Mrs. Scott, Mr. Carbone would not have known thereof. Certainly, Mrs. Scott and her fiance were interested in securing a place to live in and that place was pointed out to Mrs: Scott by Mr. Shelby. Without Shelby’s assistance she could not have directed Mr. Carbone to the property. The testimony of Mr. Carbone as quoted above refutes the testimony of defendant that he did not know prior to the passage of the act of sale that Mrs. Scott and Mr. Carbone were directed to the property through the efforts of a real estate agent. With but little inquiry defendant would have ascertained that plaintiff was responsible for procuring a purchaser for his property.
The rule controlling the instant facts is set out clearly in Sollie v. Peoples Bank & Trust Company, La.App.1949, 194 So. 116, 117, and the authorities cited therein by Judge Taliaferro:
“Through plaintiff’s efforts a purchaser was found who paid the price the owner was willing to accept, the same price plaintiff was authorized to close a sale for. The owner and purchaser were brought together through plaintiff’s efforts. He was the procuring cause of the sale. The fact that the sale was afterward consummated between the owner and purchaser, without plaintiff’s presence or knowledge, has no material bearing upon defendant’s liability for payment of the commission. Kaufman Agency *402 v. Viccellio, et al., La.App., 174 So. 709-711, and cases therein cited.
“The rule prevailing generally throughout the country is well stated in 4 R.C.L. page 320, par. 58, as follows: ‘In many cases the question has ‘ arisen as to whether or not there has been a performance of the contract on the broker’s part, where the transaction contemplated has been negotiated or closed by the principal himself. The general rule deducible from the decisions upon the question would seem to be that if there is nothing peculiar in the contract of employment it is not necessary that the broker should negotiate the sale when he has found, or procured, or if he has introduced, or given the name of, a purchaser who is able, ready, and willing to purchase the property upon the terms named by the principal, and the principal has entered into negotiations with such purchaser, and concluded a sale with him; and in such cases the broker has performed his contract, and is entitled to his commissions.’
“The rule is tersely given in 12 C.J.S. [Brokers] § 93, p. 215, as follows: ‘Provided he is the procuring cause of the transaction, a broker is entitled to a commission on a transaction with a customer procured by him, even though the final negotiations are conducted or the transaction is closed by the principal personally.’
“The Supreme Court of this state has, in several cases, recognized the rule embodied in the quotations, supra, and enforced it in proper cases. In Grace Realty Company v. Peytavin Planting Company, 156 La. 93-96, 97, 100 So. 62, 63, 43 A.L.R. 1096, dissertat-ing upon facts to which said rule was applicable, said:
“ ‘It is well settled that where a broker, who is employed to sell property at a given price, and for an agreed commission, has opened negotiations with a purchaser, and the principal, without terminating the agency of negotiations so commenced, takes it into his own hands, and concludes a sale for a less sum than the price fixed, the broker is entitled, at least, to a ratable proportion of the agreed commission.
“ ‘This rule is supported by numerous authorities, upon the ground that the broker is, in such a case, really the moving cause of the sale, as he has brought the parties together and thereby procured a purchaser and performed his contract which was contingent upon his success. Hoadley v. Savings Bank of Danbury, 71 Conn. 599, 42 A. 667, 44 L.R.A. [321] 350, 351, note, citing numerous authorities.’
“Many cases from other states are cited to support the rule. The court, in passing, also said: ‘The decisions above quoted, when considered as a whole, are based, not only upon the principle that in such cases the agent is considered as the proximate or procuring cause of the sale, but also upon the equitable maxim that the principal shall not be permitted to enrich himself at the expense of the agent or broker, whose services have inured to his benefit.’ ” See also the following authorities: Corbitt v. Robinson, La.App.1951, 53 So.2d 259; Lawrence v. Bailey, La.App. 1949, 41 So.2d 474; U. S. Realty Sales of Shreveport v. Rhodes, La.App.1948, 34 So.2d 523; White v. Havard, La.App.1946, 25 So.2d 108; Sollie v. Peoples Bank & Trust Company, La. App.1940, 194 So. 116; Grace Realty Company v. Peytavin Planting Company, 1924, 156 La. 93, 94, 100 So. 62, 43 A.L.R. 1096.
Though we deem the foregoing authorities controlling, we have carefully reviewed the cases cited by counsel for the defendant. He strongly relies upon Rosenblath v. Brumfield, La.App.1943, 15 So.2d 474, a decision of this court which held the broker plaintiff not entitled to a commission. We do not consider, however, this case or the other authorities cited by defendant applicable to the facts under our consideration. Whether or not a broker has procured a purchaser and his services are the proximate cause of a sale is an issue of fact. In every such case the circumstances vary to the extent that each case must be decided on its own peculiar factual situation. In Rosenblath v. Brumfield, supra, the decision turned upon the fact another broker brought about the sale of the property and that he alone was entitled to the commission. Certainly, a different factual situation is involved in the instant case. We are convinced that Shelby, the representative of plaintiff, was responsible for *403 the sale of defendant’s property and therefore, the commission should be paid.
It follows, therefore, that there is no error in the judgment from which appealed, and accordingly, it is affirmed at appellant’s cost.