GLADNEY, Judge.
Henry H. Wright and his wife, Mrs. Lucille Wright, brought this suit against Walter Monsour, Emile' G. Monsour and Fred Monsour, to recover a real estate agent’s commission allegedly earned by Mrs. Wright on the sale' of a building by the aforesaid three brothers, the owners of said building, to Edwin Moore. After trial,, judgment was rendered in favor of plaintiffs and against defendants Walter and! Emile G. Monsour for two-thirds of the commission allegedly due. Proceedings were abandoned against Fred Monsour, a non-resident, when legal service could-not be secured. From a judgment favorable to plaintiffs, the defendants have prosecuted this appeal. ■ •
The appellants present two defenses. The first denies liability for the commission on the ground that no agreement was had as to the amount of the real estate fee or commission. The record, however, conclusively shows the defendants thoroughly understood that in event of a sale entitling Mrs. Wright to a commission, the amount thereof would be the usual and regular rate of commission charged by the Shreveport Real - Estate Board. The second reason advanced for refusing to pay the commission is that Mrs. Wright was not the procuring cause of the sale. This latter contention is the only serious issue in this case.
The Monsours owned a commercial building located in the 200 block of Texas Avenue in Shreveport. For more than a year prior to its sale to Edwin Moore, the owners had been attempting to- sell it through three real estate agents of Shreveport, each of whom was employed on a non-exclusive basis. The property was so listed with Mrs. Wright and she made repeated efforts to procure a sale,- first at the asking price of $100,000, and later for the sum of $75,000. During this period she advertised the property and contacted numerous prospects to no avail. Edwin Moore, a personal friend of the owners, had apparently from time to time indicated an interest'in purchasing thé building, but not at the prices so indicated. On Saturday, May 22, 1955, the Monsours in -order to secure a quick sale, decided to reduce the asking- price of their property to net them $50,000.
*588 , Shortly after noon on said date, Walter Monsour met Linton Carney on the street and requested that Carney have his business associate, Moore, get in touch with him.- Walter Monsour testified he told Carney he wished to talk with Moore with reference to the sale of the building. Carney, however, testified that Monsour simply asked that he have Moore contact him, and he was unable to so inform Moore until about- 1:00 o’clock of May 24th, when Moore, without elaborating, told him that he had already seen Monsour.
Early Monday morning, May ;24th, the Monsours in-formed the several real estate agents, including Mrs. Lucille Wright, that they had reached an agreement to lower the selling price of the building to $50,000, which amount should be net to them. In her testimony, Mrs. Wright stated she understood from Walter Monsour she should endeavor to secure in addition to $50,000 her real estate commission and a certain sum to cover alterations, and, therefore, suggested that her quoted price be $55,000, which figure she relates was agreeable to Walter Monsour. The latter, in testifying, said he could not recall this turn of the conversation, but indicated the owners expected to receive $50,000 net. It is conceded that during the morning of May 24th, Mrs. Wright telephoned Edwin Moore and informed him the Monsours had reduced the asking price of the building and it could be purchased for the sum of $55,000. Mr. Moore testified he then informed Mrs. Wright he was not interested in the purchase of the building at all. He stated further there was no conversation whatsoever about any alterations to the building, and that Mrs. Wright quoted a price of $55,000. Mrs. Wright’s testimony is to some extent at variance with that given by Moore. She says Mr. Moore .told her that he would go right down to see Walter Monsour and that immediately thereafter she telephoned Walter Monsour and told him that Mr. Moore would be down to talk with him about the building. Walter Mon-sour had no recollection of such a conversation but admits that on that same day after he had seen Moore and given him a verbal option to purchase the building, Mrs: Wright did inform him she had contacted Moore early that morning. Mrs. Wright said also that after the option was given to purchase the building, Walter Monsour repeatedly had advised her she was entitled to and would receive her real estate commission from the sale. Her testimony to this effect is corroborated by that of Har-ney S. Bogan, Jr., and LeRoy H. Scott. Walter Monsour denies making such affirmations, explaining that he only assured Mrs. Wright she would receive her commission if she made the sale. Irrespective of these differences in the testimony, however, the following pertinent stipulation appears in the agreement to buy and sell executed by the Monsours and Edwin Moore on June 4, 1954:
“Vendee agrees to pay any and all real estate agent’s fees which may have been incurred by vendors in the sale of this property to this vendee.
“Vendee agrees to assume on behalf of vendors the obligations contained in that certain lease by and between the Abe Meyer Corporation of Shreveport and the vendors covering the property adjacent t'o that property above described insofar and only insofar as it obligates vendors to restore the leased premises to the condition they were in at the time of the execution of the said lease. All remaining obligations of the lease shall remain the obligations of the vendors herein.”
A discussion as to whether the performance by a real estate broker entitles the broker to a commission appears in the case of Dew v. Hunter, 1953, 66 So.2d 400, 402, wherein this court reviewed the law in the following manner: -
“ ‘The rule is tersely given in 12 C.j.S. (Brokers) § 93, p. 215, as follows : “Provided he is the procuring cause of the transaction, a broker is entitled to a commission on a transaction with a customer procured by him, even though the final negotiations are conducted or the transaction is closed by the principal personally.”
*589 ‘“The Supreme Court of this state has, in several cases, recognized the rule embodied in the quotations, supra, and enforced it in proper cases. In Grace Realty Company v. Peytavin Planting Company, 156 La. 93-96, 97, 100 So. 62, 63, 43 A.L.R. 1096, dissertating upon facts to which said rule was applicable, said:
“ ‘ “It is well settled that where a broker, who is employed to sell property at a given price, and for an ■agreed commission, has opened negotiations with a purchaser, and the principal, without terminating the agency or negotiations so commenced, takes it into his own hands, and concludes a sale for a less sum than the price fixed, the broker is entitled', at least, to a ratable proportion of the agreed commission.
“ ‘ “This rule is supported by numerous authorities, upon the ground that the broker is, in such a case, really the moving cause of the sale, as he has brought the parties together and thereby procured a purchaser and performed his contract which was contingent upon his success. Hoadley v. Savings Bank of Danbury, 71 Conn. 599, 42 A. 667, 44 L.R.A. (321) 350, 351, note, citing numerous authorities.”
“ ‘Many cases from other states are cited to support the rule. The court, in passing, also said: “The decisions above quoted, when considered as a whole, are based, not only upon the principle that in such cases the agent is considered as the proximate or procuring cause of the sale, but also upon the equitable maxim that the principal shall not be permitted to enrich himself at the expense of the agent or broker, whose services have inured to his benefit.” ’ See also the following authorities: Corbitt v. Robinson, La.App.1951, 53 So.2d 259; Lawrence v. Bailey, La.App.1949, 41 So.2d 474; U. S. Realty Sales of Shreveport v. Rhodes, La.App.1948, 34 So.2d 523; White v. Havard, La.App.1946, 25 So.2d 108; Sollie v. Peoples Bank & Trust Company, La.App.1940, 194 So. 116; Grace Realty Company v. Peytavin Planting Company, 1924, 156 La. 93, 94, 100 So. 62, 43 A.L.R. 1096.”
This court pointer out in the case, oí Malarcher v. Nackley, 1954, 73 So.2d 580, 582, that under certain circumstances performance by a broker would be considered as fulfilled. Therein we referred to Article 2040 of the LSA-C.C., which provides :
“The condition is considered as fulfilled, when the fulfillment • of -it has been prevented by the party bpund to perform it.”
In Malarcher v. Nackley, the court also felt that consideration should be’ attached to the meaning of Article 1965'of LSA-C.C., reading:
“ ‘The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity.’ ”
Counsel for appellants directs our attention to two citations as sustaining appellants’ position. We have carefully examined the cases referred to.and find them not controlling herein. In Lehmann v. Howard, 1950, 49 So.2d 453, this court was convinced the owner terminated his contract with the broker only after negotiations with the broker’s prospect had broken off. We held the new negotiations between the owner and said prospect began thereafter and regardless of the time interval showed no collusion ■ and presented an entirely new relationship. There was never any discontinuance of the services of Mrs. Wright by the Monsours. Their contention is confined to the issue of whether vel non Mrs. Wright was the procuring cause of *590 the sale. The other decision relied upon by counsel is also inapposite. Ramsey v. Harry Bros. Company, 1942, 11 So.2d 256, decided by the Orleans Court of Appeals, dealt with the employment of a broker limited to the submission of the property for sale to a named prospective purchaser. When negotiations for the sale to that party failed, and the owner sold to another party, the court properly refused the broker’s claim for a commission. The facts in the instant case manifestly present an entirely different legal situation.
We have resolved Mrs. Wright was entitled to the commission claimed as she was the procuring cause of the sale. It can hardly be doubted Moore immediately contacted the owners of the property solely as the result of his telephone conversation with Mrs. Wright. Moore’s profession to Mrs. Wright he was not interested in purchasing the building is completely refuted by his haste to secure an option, the effect of which was to forestall competitive prospects which could be produced by Mrs. Wright and the other relators. Conceding, arguendo, the evidence discloses that on prior occasions and independently of any service from Mrs. Wright, Moore had become acquainted with the property and had a desire to purchase it, nonetheless, he did obtain a substantial benefit and advantage from the timely receipt of information through the telephone call. Mrs. Wright testified she was engaged in showing a different prospect the property when she was informed by Walter Monsour that Moore had been given an oral option. A number of hours intervened between the telephone message from Mrs. Wright and the delivery of Walter Monsour’s message by Carney to Moore. The advantage in' time thus enabled Moore to obtain the verbal option before other prospective purchasers had an opportunity to negotiate concerning the sale.
As pointed out in the. authorities above set forth, where there is some interposition which may preclude a broker from carrying his performance to a completion of the sale, he is relieved from such further performance under circumstances which show his efforts were ignored or excluded without which the sale would likewise have been concluded.
In our conclusion herein we are supported by the findings of the district judge set forth in written reasons, in which there is a careful analysis of the evidence and citation of authorities. Accordingly, the judgment from which appealed is hereby affirmed at appellants’ costs.