Plaintiff, a duly licensed real estate broker, sued to recover a commission on the sale of certain property belonging to defendants. Judgment was rendered in favor of defendants rejecting the demands of plaintiff, from which judgment plaintiff prosecutes this appeal.
By written contract of December 14, 1943, the defendant, L.S. Havard, appointed plaintiff, Charles N. White, as exclusive agent for the purpose of selling a tract of 18 acres of land upon which there were two houses, and which tract, for the obvious purpose of procuring a quick sale, was divided into a three-acre tract on which there was a five-room house, and a fifteen-acre tract with a six-room house. These tracts were to be offered at $7,500 and $9,500 respectively, or a total of $17,000 payable in cash to the seller. The term of the contract of exclusive agency was fixed at thirty days from date thereof.
It is established that, pursuant to the authority evidenced by this agreement, plaintiff advertised the properties described and made numerous attempts to dispose of the same. However, no sale was made of either tract within the thirty-day term. Notwithstanding the expiration of the term, plaintiff, with the knowledge, acquiescence and the implied consent of the defendants, continued to advertise the properties, and on the 22nd day of January, 1944, concluded a sale of the three-acre tract to Preston *Page 109 
F. Hall, for a total consideration of $7,000 cash, and accepted a deposit of $500 as a down payment. The deed from the Havards to Hall was executed on January 29th.
When the discussion with reference to the sale of this property first took place between plaintiff and defendants, plaintiff was advised that defendants had an option to purchase certain property in the State of Colorado and needed to realize $15,000 net, in cash, on the sale of their property in order to permit taking up the said option. It was at plaintiff's suggestion that the asking price for the properties was advanced to an aggregate of $17,000, in order to permit the allowance of a trading margin.
Very shortly after the execution of the contract between plaintiff and defendant, Havard, on December 14th, plaintiff contacted a Mrs. Hazleton in the attempt to interest her and her husband in the purchase of the fifteen-acre tract. Plaintiff at the time was advertising certain property owned by the Hazletons and was given to understand that they were interested in the Havard property, but could not enter into serious negotiations unless they could dispose of their own property. However, the Hazletons, over a period of time from about the middle of December to the latter part of January, discussed the Havard property not only with plaintiff but with the Havards, and, from the testimony in the record, the conclusion that they were interested, during this entire time, in the prospect of purchasing the property is inescapable.
During this time a Mr. Dinnat called plaintiff for the purpose of inquiring about the Havard property, stating that he might be interested in making a loan. It subsequently developed that the Hazletons were dealing with Dinnat to the end that they might procure a loan from Dinnat which would enable them to pay cash for the purchase of the Havard property.
The picture limned by these facts is clear; defendants wanted to make a quick sale of their property for not less than $15,000 cash, in order to take advantage of an option to purchase property in Colorado, and the services of plaintiff were procured to effect this purpose. Through the efforts of plaintiff a portion of the property was sold and he had been in contact, more or less constantly, with a couple who were prospective purchasers of the remainder of the property, but who had given him to understand that they could purchase the property only in the event they could sell some city property of their own, which they had listed with him for sale.
After the consummation of the sale to Hall on January 29th, for which defendants paid plaintiff his commission of $350 cash, the picture becomes blurred and indistinct, by reason of the conflict of testimony as to subsequent events.
On the day the Hall sale was closed, the defendant Havard talked to plaintiff by telephone and advised him that he was "withdrawing his property from the market," or words of similar import. Plaintiff testified that in answer to this advice, in the same conversation, he notified the defendant Havard that he would expect payment of a commission in the event a sale should subsequently be made to the Hazletons.
An analysis of the testimony of all the witnesses reflects some significant facts, namely, that the Hazletons and Dinnat were present at the Havards' home when Havard notified plaintiff that he was withdrawing the property from the market; that there had been at least some discussion between the Havards and the Hazletons with reference to plaintiff's right to a commission. Defendant, Havard, testified that his reference to the possibility of White claiming a commission was in the nature of jest, and was not serious, but we can not overlook, in this instance, the application of the adage that "many a truth is spoken in jest." It is evident that the matter of a commission was discussed, and it is also evident that the Hazletons were interested in negotiating for the purchase of the Havard property for some time before the authority to sell was specifically withdrawn from plaintiff by the defendants.
The fifteen-acre tract in question was sold to the Hazletons and deed evidencing the sale was executed on the 9th day of February, 1944, some ten days after the incident above described. The consideration of the sale was shown to be $2,350 cash, and $6,000 on credit, but, as a matter of fact, the testimony shows that the Havards received the entire amount in cash, due to the fact that Dinnat bought the notes evidencing the credit portion of the purchase price.
It is also shown that by letter of January 23rd, and another letter of like import of January 24th, the Hazletons withdrew from *Page 110 
plaintiff the authority to offer their property for sale.
There is considerable testimony to the effect that the Hazletons advised the Havards that they would not purchase the property if they had to deal through the plaintiff, White. And there is also testimony to the effect that the Hazletons repeatedly informed White that they were not interested in the Havard property at the price of $9,500, nor, indeed, could they be interested in it at any price unless and until they disposed of their own property.
The learned Judge of the District Court, in a well considered written opinion, correctly stated the rule of law with reference to plaintiff's right to a commission, but, in our opinion, misinterpeted the facts which bore directly upon this right.
After stating the pertinent facts of the case and citing the leading authorities on the question of law involved, our brother of the lower Court summed up his application of the facts to the law of the case in the following words:
"In the light of the jurisprudence as established by the cases cited above and under the facts in the present case, was the plaintiff the procuring cause of the sale by the defendant to the Hazletons? I think not. When the contract between plaintiff and defendant expired the Hazletons were not interested in the prospective purchase. They had "forgotten it" so they said. They had not met the defendant and, of course, had not discussed a possible sale. At that time the defendant definitely had no knowledge that the Hazletons were "likely to buy," or were in anywise prospects. Had the matter rested as it was on that date no sale would ever have been consummated. Undoubtedly the plaintiff was of the opinion that the Hazletons would not "likely buy." It was his idea that they would necessarily have to sell their city property before purchasing and that sale was never made.
"It seems that the Hazletons never in fact became interested until the meeting of Mrs. Havard and. Mrs. Hazleton on the street in Alexandria on Saturday, January 22, 1944. The Hazletons, with their parents, called to see the property for the first time on the next day. It seems that the representations made by Mrs. Havard on January 22 was the procuring cause of the ultimate sale.
"Although the contract had expired and defendant considered that under it he had the right to sell the property after the expiration date without the payment of a commission, in fairness to the plaintiff, who had continued advertising the property, he advised the Hazletons to see the plaintiff. It was then that the defendant was informed by the Hazletons that they would not purchase if the plaintiff had anything to do with it. The Hazletons returned on the following Tuesday and were again requested by the defendant to deal through plaintiff with the same response from the Hazletons. The defendant waited until the following Saturday for any prospects from the plaintiff and after calling him on the telephone regarding any prospects he might have and finding he had none, then passed title to the Hazletons."
[1] While it is true that the Hazletons were not definite prospects as purchasers at the time of the expiration of the contract between plaintiff and defendants, we are forced to conclude that his efforts were in truth the procuring cause of the sale to the Hazletons, and, on this point, we differ radically with the finding and application of the facts as made by our distinguished brother.
Reference to the testimony of Mrs. Havard reveals the following pertinent question and answer on direct examination of the witness:
"Q. We are not concerned with the Hall sale. Do you know what negotiations took place between your husband and the Hazletons before the final agreement to make this sale took place? A. Well, they came out there with Mr. Dinnat two or three times, I have forgotten which, and I remember when Elaine (Mrs. Hazleton) came out with $500.00 and my husband would not take it, that was after Mr. White had put his ad in * * *."
In light of this testimony, there can remain no question but that the Hazletons were serious prospects, and in fact, had offered to make a deposit on the property some time prior to the date on which the plaintiff was notified that the property was withdrawn from the market or from further listing.
We quite agree with the trial Judge in his observation as to the good faith of the defendants and our findings do not in any sense reflect upon their fairness, but we *Page 111 
are definitely of the opinion that they were dealing under a misapprehension or misunderstanding of plaintiff's rights under the law.
[2] Plaintiff had certainly produced, in the persons of the Hazletons, parties who were interested in the property, and his failure to actually perform the final work of clinching the sale must be attributed to the refusal of the prospects to deal through him and their persistence in dealing direct with the Havards, as the owners of the property.
We think the case of Sollie v. People's Bank Trust Company, La. App. 194 So. 116, is determinative of the issues of law involved in the instant case.
[3] The mere fact that the principal terminated the authority of the agent is not sufficient to deprive such agent of his right to a commission, particularly when, at the very moment of notification, the principal was engaged in negotiations with prospects who had been interested by the agent.
For the reasons assigned, the judgment appealed from is annulled, set aside and reversed, and:
It is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Charles N. White, and against the defendants, Leroy S. Havard and Mrs. Maude Haw Havard, jointly and in solido, in the full sum of Four Hundred Seventeen and 50/100 ($417.50) dollars, with legal interest thereon from date of judicial demand until paid, and for all costs of both Courts.