This is a suit for a real estate agent's commission. Plaintiff's contention is that defendant Rhodes sold his store, fixtures and equipment as a result of plaintiff's efforts and that the defendant had made a verbal agreement to pay a 5% commission in the event that such sale was made. The defendant admitted the sale of his store to the purchaser introduced to him by the plaintiff but denied that he had made any agreement to pay a commission to plaintiff. Defendant made the alternative contention, in the event the Court should find the agreement to pay a commission had been made, that there was a complete break off of negotiations from the time the prospective purchaser was introduced to him and the day the transaction was finally consummated, and that plaintiff performed no services in the transaction resulting in the sale of the property.
The District Court found for the defendant and plaintiff has appealed.
The record discloses that defendant, prior to January 20, 1947, owned and operated a store at 2214 Missouri Avenue in the city of Shreveport, Louisiana. Some time previously, plaintiff, a partnership engaged in the real estate business, had made tentative arrangements for the sale of a store in Vivian, Louisiana to a Mr. J.H. Kaufman. This sale, for some reason not disclosed by the record and not of interest in this case, was not consummated. The Kaufmans were anxious to buy a store. On January 20, 1947, plaintiff's agent, while accompanying the Kaufmans in their *Page 524 
search for a suitable store, stopped at Mr. Rhodes place of business. Defendant Rhodes declined to sign a contract with the plaintiff company listing his store for sale or to name a price for which he would sell his store, but was agreeable to a resumption of negotiations at a specified time two days later when the place of business would be closed on Wednesday afternoon. An agent of plaintiff came back with the Kaufmans at the time set. The sale was not completed. Plaintiff's agent who on this occasion was told that Rhodes did not intend to sell, believes that there was a side understanding between Rhodes and Kaufman to complete the sale later without the intervention or aid of the broker. It is not unlikely that such an agreement could have been made, particularly in view of the fact that a few days later the parties did reach an agreement and the sale of the business was consummated with no further effort on the part of the plaintiff firm, which however took the precaution of having one of the members call at defendant's store and inform him that in the event a sale was consummated, plaintiff would expect a commission.
[1] We concede the proposition of law urged by the plaintiff that one who is employed as a broker becomes entitled to his commission whenever he procures for his principal a party with whom he is satisfied and who actually contracts for the purchase of the property and that once the owner and purchaser are brought together through the broker's efforts the fact that the sale is afterwards consummated between owner and purchaser without the broker's knowledge or presence does not relieve the owner from liability to pay the broker's agreed commission. Sollie v. Peoples Bank Trust Co., La. App., 194 So. 116.
The defendant admitted that Spears (agent of plaintiff) called on him and requested a listing and that Spears introduced Mr. and Mrs. Kaufman to him. The defendant admitted that plaintiff's agent, Spears, brought the Kaufmans to his store on January 20th and that he subsequently sold the business to the Kaufmans for the price set forth in the petition. However, he denies that at any time he agreed to pay plaintiff a commission on the sale, testifying that he not only did not solicit their aid in selling his store, but that he refused to sign a contract listing his property or to otherwise authorize plaintiff to represent him in any negotiations for the sale of his store.
Only one of the three representatives of plaintiff who called at defendant's store testified that Mr. Rhodes agreed to pay a commission to the plaintiff. The report of his direct and cross examination when first called to the witness stand covers six of the thirty pages of testimony in the record, but he did not testify as to the amount of commission that Mr. Rhodes allegedly agreed to pay. Just before closing, plaintiff recalled him to the stand and he testified in answer to the question, "What was the commission?" "I believe the rate was 5% of the gross sale price." Even this witness admitted that Mr. Rhodes refused to list his place with plaintiff.
The Kaufmans testified that plaintiff's agent, at the time he carried them to the store, stated that the Rhodes store was not listed with plaintiff.
[2] The conduct of Rhodes may in a strict sense be somewhat reprehensible in that while declining to accept plaintiff's offer to act as broker in the sale of the store, he nevertheless opened sale negotiations with Kaufman in company with plaintiff's agent and later completed the sale without plaintiff's knowledge. However, the decisive point in the case before us is not whether Rhodes in some ways took advantage of plaintiff's eagerness to find a suitable store for its client Kaufman, but rather whether or not there was, under the circumstances, a legal and binding relationship of owner and broker between plaintiff and defendant. The record fails to establish that defendant Rhodes employed plaintiff as a broker or agreed to pay a commission on the sale. On the contrary, we find that plaintiff was primarily representing Kaufman the purchaser and that the agent's efforts to secure Rhodes' agreement for his firm to act as his agent were unsuccessful.
In view of our finding that the plaintiff has not shown that defendant agreed to *Page 525 
pay a commission on the sale of his store, it is unnecessary to pass upon the alternative defense that there was a complete break in the negotiations between the time that plaintiff's agent introduced the prospective purchaser to Rhodes and the final sale.
The plaintiff having failed to establish its case by reasonable preponderance of proof, the judgment of the District Court rejecting its demands is correct. The judgment is affirmed, with costs.