REGAN, Judge.
Plaintiff, George Newell & Son, a partnership composed of George E. Newell and Robert L. Newell, instituted this suit against the defendant, R. C. Hensarling, endeavoring to recover the sum of $1512.00, the broker’s commission due plaintiff for procuring a purchaser for defendant’s property located in 200 Hector Street in Jefferson Parish. Plaintiff asserted that the sale was consummated through its agent’s efforts, but that defendant dealt with the buyer directly immediately before the agreement to buy and sell was signed in order to deprive plaintiff of the 6% commission due under the provisions of a verbal contract which existed between plaintiff and defendant.
Defendant answered and denied that he had employed the plaintiff realtor to sell the property and additionally denied that the sale was consummated as the result of the efforts of plaintiff’s agent.
From a judgment in favor of plaintiff as prayed for, the defendant has prosecuted this appeal.
The record reveals that the defendant is a speculative contractor, who erects both buildings and residences and then endeavors to sell them. Prior to the sale from which this litigation arose, plaintiff had successfully acted as defendant’s agent on four other occasions in disposing of his property. In three of these instances, plaintiff had an exclusive listing of the property and on the fourth he did not. The commissions earned by plaintiff as a result of each sale were fixed in conformity with the rates then recommended by the Real Estate Board of New Orleans.
In June of 1960, Mrs. Harold Levy, one of plaintiff’s sales persons, was contacted by Mrs. Rose Prieur, who asked Mrs. Levy to find her a desirable home. Mrs. Levy knew that the defendant wished to sell the residence in 200 Hector Street and called him requesting that he permit Her to show the property to a client. She then showed the property to Mrs. Prieur, who appeared to be a good prospect. The following month she again visited the house with Mrs. Levy, but on this occasion she obtained the construction blueprints from defendant in order to go over them with Mrs. Prieur. Thereafter, she and the prospective buyer discussed with the defendant the possibility of making certain alterations to the house before she would submit an offer to purchase.
On September 7, 1960, Mrs. Levy finally obtained an offer from Mrs. Prieur to purchase the house for $23,500, executed on the Standard Form of contract prepared by the Real Estate Board of New Orleans.
Defendant did not sign this offer, but on September 8, 1960, he submitted a counter offer to Mrs. Prieur to sell the property for $26,300, which was also executed on the standard form referred to hereinabove. One of the provisions contained therein was that the seller agreed to pay the real estate agent’s commission of six percent. However, Mrs. Prieur did not accept this offer.
Although Mrs. Levy’s efforts during the month of September to bring the parties together were unsuccessful, she knew that Mrs. Prieur remained interested in the house and therefore telephoned her on several occasions to discuss the submission of another offer. Finally, on October 28, 1960, she obtained an offer to purchase for *482 $25,000 from Mrs. Prieur and brought it to defendant. On the same form, defendant submitted a counteroffer to sell for $26,500 writing over the amount inserted by the prospective purchaser, tie then gave this to Mrs. Levy to submit to Mrs. Prieur, who again rejected the offer.
Four days thereafter, Mrs. Levy was informed by Mrs. Prieur that she had dealt directly with defendant and they had agreed to a sale of the property for a consideration of $25,200. At this time the purchaser offered Mrs. Levy $50 for her efforts to bring the parties together, which the agent refused.
All of the offers and counteroffers contained a provision for making the alterations to the premises which Mrs. Prieur had requested in July 1960.
The purchaser explained that between the time she received the defendant’s last offer from Mrs. Levy and the time she finally called the agent to inform her of the agreement, she had received a telephone call from a saleswoman named Mrs. Alle-man, who was employed by the defendant at the time. Initially Mrs. Alleman endeavored to interest her in a house near Veterans Highway, but she informed her that she did not wish to reside in that neighborhood. At this point, Mrs. Alleman told Mrs. Prieur that defendant also had another home for sale in Hector Street. When the purchaser informed Mrs. Alleman that she was very interested in that particular property but that she and the owner could not agree on price, Mrs. Alleman suggested to her that she deal directly with the owner. A meeting was then arranged and the agreement to buy and sell was consummated.
The defendant admitted that he met the ultimate purchaser through plaintiff’s agent; however, he asserted that he did not give the plaintiff an exclusive listing to sell the property. Although he conceded that he employed Mrs. Alleman and paid her $200 to sell the Hector Street property, he denied that he instructed her to call Mrs. Prieur. Mrs. Alleman was not called as a witness on defendant’s behalf.
Predicated on the foregoing facts, the trial judge concluded that the defendant had verbally agreed to pay plaintiff the standard broker’s commission should the plaintiff procure a purchaser and that the buyer was procured solely through the efforts of plaintiff’s agent.
Counsel for the defendant first contends that the trial court erred in awarding plaintiff the commission because there was no contract of employment.
This contention is without merit. In addition to Mrs. Levy’s testimony to the effect that the standard commission had been agreed to and that the Newell agency had always dealt with defendant in the past on this basis, there were two counteroffers made by defendant through Mrs. Levy to the purchaser, in which the defendant agreed to pay a six percent commission.
Thus, having established the contractual relationship of principal and agent, which is a prerequisite to recovery, it was only necessary for the plaintiff, the real estate broker, to establish that his firm was the "procuring cause” of the sale.[1]
In a relatively recent case,[2] the “procuring cause” of a sale was defined as follows;
“ * * * the efforts of a broker in introducing, producing, finding, or interesting a purchaser, and means that negotiations which eventually lead to a *483 sale, must be the result of some active effort of the broker. * * * ”
The evidence adduced on the trial hereof clearly establishes that Mrs. Levy’s efforts were responsible for the ultimate agreement, and we, like the trial judge, are unable to conclude that Mrs. Alleman’s call to Mrs. Prieur was a mere coincidence and was not prompted by the defendant himself.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Veters v. Krushevski, La.App., 100 So.2d 93; Womack Agencies, Inc. v. Fisher, La.App., 86 So.2d 732; Wright v. Monsour, La.App., 86 So.2d 586 (1956).

. Womack Agencies, Inc. v. Fisher, La.App., 86 So.2d 732-734 (1956).