216 So.2d 906 (1968)
Thomas C. KEATING, d/b/a Keating Agency, Plaintiff-Appellant,
v.
Jessie P. LACHNEY, Defendant-Appellee.
No. 7505.
Court of Appeal of Louisiana, First Circuit.
December 16, 1968.
*907 Sanders, Miller, Downing & Kean, Baton Rouge, for appellant.
Ronald L. Causey, Baton Rouge, for appellee.
Before LANDRY, REID and SARTAIN, JJ.
SARTAIN, Judge.
Plaintiff, Thomas C. Keating d/b/a Keating Agency, a real estate broker in the Parish of East Baton Rouge, appeals from a judgment of the district court denying him recovery for a commission allegedly due resulting from a verbal listing of the property owned by defendant, Jessie P. Lachney, and the subsequent sale thereof to Lance J. Chauvin, Jr. The property in question is identified as Lot 53, West Merrydale Subdivision, Third Filing, in the Parish of East Baton Rouge.
The facts in this case are not in dispute and involve the primary testimony of three persons, namely: James R. Wheat, a licensed real estate agent with plaintiff, Jessie P. Lachney, the owner-vendor, and Lance J. Chauvin, Jr., the ultimate purchaser.
Mr. Wheat testified that he was employed with defendant at the Louisiana Department of Highways in Baton Rouge and that around the middle of June, 1966, the defendant informed him that he anticipated getting a transfer to Alexandria in which case defendant would want to sell his house. The witness stated that at this time his agency had some signs on a vacant lot adjacent to defendant's home. He stated that near the first of July or maybe a little later he received a call from Mr. Chauvin inquiring as to the price of the house that was for sale on Vineyard Drive in the aforementioned subdivision. Wheat advised Chauvin that they did not have the house itself listed but that they knew the owner and felt like the house might be for sale at a later date. Very shortly thereafter the defendant informed Wheat that his transfer had been obtained whereupon Wheat asked permission to sell his house for him. Defendant agreed to the price and the figures quoted and advised Wheat that he would be satisfied if defendant could accomplish the sale of his home under those conditions and gave him permission to proceed. Wheat then contacted Chauvin and told him that he would be able to show him the house and an appointment was made. Mr. and Mrs. Chauvin went to the home of defendant. There in the presence of defendant and his wife, Chauvin and his wife and Wheat a purchase agreement was executed. The agreement is dated July 27, 1966 reflecting a total consideration of $19,500, reserving unto each party the right to demand specific performance and showing a down payment of $900. The agreement provided that the home was to be financed on an F. H.A. or V.A. loan of 30 years and was to be passed within 90 days with occupancy at the time of the act of sale. The purchase agreement was signed by Lance J. Chauvin. The owner's acceptance signed by the defendant also provided the payment to plaintiff of a commission in the sum of $1,000. At the time the purchase agreement was executed, Wheat explained to the defendant the amount of the commission, the cost of transferring title and the estimated discount. Wheat also said he would set up an appointment for the following day for Mr. Chauvin to go to the loan company to make an application.
The next day when Wheat called Chauvin to advise him of the appointment Mrs. Chauvin stated that her husband would be unable to make it and the appointment was *908 cancelled. Later that same evening Chauvin called Wheat to say that he had changed his mind and no longer desired to purchase the home. Wheat advised Chauvin that he would have to discuss this matter with plaintiff and also with the defendant. Before Wheat could talk to plaintiff, defendant called back and advised Wheat that if Chauvin did not wish to purchase his home, he didn't want to force him to take it. Within the next day or two Wheat discussed this matter with his employer and they agreed that if defendant did not desire to demand specific performance plaintiff and Wheat would not require the payment of their commission. Wheat then called defendant and advised him that the "agreement was torn up".
The testimony of Mr. Wheat is fully corroborated by that of Mr. Chauvin who was called as a witness on behalf of plaintiff. Mr. Chauvin testified that the day after he signed the purchase agreement he realized that he was a "little over anxious" and after further contemplation concluded that he preferred not to buy the house. He stated that "Wheat was upset and I don't blame him." He also stated that after defendant learned from Mr. Wheat that he (Chauvin) was not going to buy the home, defendant called Chauvin to find out exactly what was happening and was informed by Chauvin that he felt like he had just "overshot" his budget and wanted out of the deal. He stated that the defendant said that he was curious because he thought that the deal was settled and just wanted to find out why Chauvin had tried to back out of it. About three or four days later Chauvin testified that defendant called him and asked if Chauvin would be interested if the home could be purchased for less than the original agreement. Chauvin stated that he would and an agreement was made whereby the defendant would sell his home to Chauvin for a total consideration of $17,500. The witness was very definite in that it was the defendant who called him and it was the defendant who made the offer to him. He also stated that at the time he advised Wheat that he desired to be released from the transaction he had no intentions of conspiring with defendant to cheat the plaintiff out of his commission or to make any other kind of a deal. The witness further stated that he did not know defendant prior to the time that Wheat introduced him to him. Chauvin's subsequent agreement with the defendant was concluded on August 7, 1966 and an act of sale with assumption of mortgage was executed by the parties on August 8, 1966.
Mr. Lachney, the defendant, stated that about two or three weeks before his transfer became final he did mention to Wheat the possibility that his house would be for sale. At that time defendant stated that he told Wheat that he was going to try to sell the house himself but later when his transfer did come through he entered into a verbal non-exclusive listing agreement with Wheat. He stated that he told Wheat that he could endeavor to sell his house but at the same time, defendant desired to also try to sell it himself. The witness admitted that he did not know the Chauvins until he was introduced to them by Wheat. He acknowledged his signature on the purchase agreement and his commitment to pay plaintiff the sum of $1,000 as real estate commission pursuant to the listing agreement of July 27, 1966. He stated that when Wheat called him to say that Chauvin had changed his mind and desired to get out of the deal, he agreed to permit Chauvin to withdraw and declined to require specific performance or to make Chauvin forfeit the $900 down payment or to pay the real estate commission. On the day that the listing was signed the defendant gave Wheat a check for $26.00 for appraisal fee. The defendant denied that he had had any communication or contact with Mr. Chauvin between the time that the purchase agreement was signed and the time it was "torn up". He readily admitted calling Chauvin several days around the 5th or 6th of August and they concluded their agreement on August 7th and the *909 act of sale with assumption of mortgage was executed on August 8, 1966 wherein Chauvin purchased his home for a total consideration of $17,500.
The trial judge in his oral reasons for judgment which were rendered at the conclusion of the trial stated:
"To sum it all up, I think from the evidence in the case, the only thing the plaintiff had to stand on to recover in this case is the purchase agreement, and I'm satisfied from the evidence that the plaintiff waived his rights under this purchase agreement and made that clear to both Chauvin and Lachney." (Emphasis ours)
For reasons hereinafter stated we are of the opinion that the trial judge committed error in concluding that the only rights accruing to plaintiff was the result of the purchase agreement and that when the purchase agreement was terminated by mutual consent plaintiff's right to a commission also fell.
We have absolutely no argument with the trial judge's conclusion that there was no showing of collusion on the part of Chauvin with defendant to deprive plaintiff of his commission. However, we are not and cannot be convinced from this record that the defendant was not obligated to the plaintiff in the event defendant elected to resume negotiations with Chauvin a purchaser who was actually procured by and through the efforts of plaintiff's agent, Mr. Wheat. To the contrary, the evidence in this case rather convincingly shows that on the occasion that the original purchase agreement was terminated it was the intention of all three parties that Chauvin was no longer interested in the house and it was because of this fact that defendant declined to require specific performance and plaintiff agreed to forego the commission of $1,000. It certainly was not within the intention of the parties that defendant would be privileged to renew or resume negotiations with Mr. Chauvin.
The rights that accrued to plaintiff did not grow out of the written purchase agreement between defendant and Chauvin but were rights that accrued from a verbal listing between plaintiff and defendant when plaintiff's agent secured a purchaser. There is no dispute about the fact that Mr. Wheat was authorized by defendant to endeavor to obtain a purchaser for his home.
While admittedly, we have been able to find no case paralleling the facts of this case, that is where there has been an agreement to purchase and an agreed commission, and then all parties by mutual consent terminated the same only to have the owner later contact the prospective purchaser and conclude the sale. However, there are a number of points relative to real estate agent-owner responsibilities that have been very clearly set forth and established in our jurisprudence. Briefly stated they are: If a real estate broker is the procuring cause of a sale, he is entitled to a commission even though the broker may not be the exclusive sales agent for the property. Corbitt v. Robinson, 53 So.2d 259 (La.App.). This should answer the argument advanced by defendant that defendant did not grant to plaintiff an exclusive listing.
It has also been well established that a real estate broker is entitled to a commission if he is the procuring cause of the sale even though the transaction is consummated by the parties at a different price from that procured by the broker. Kaufman Agency v. Viccellio, 174 So. 709 (La.App., 1937).
A real estate broker is considered the procuring cause of a sale and is entitled to a commission if he brings the parties *910 together even though the parties conduct the final negotiations themselves and even though the broker does not have a listing or exclusive agency agreement. Searcy v. Jacobs, 151 So.2d 166 (La.App., 1963); Rolston v. Buff, 130 So.2d 732 (La.App., 1961); Veters v. Krushevski, 100 So.2d 93 (La.App., 1958); Wright v. Monsour, 86 So.2d 586 (La.App., 1956); Dew v. Hunter, 66 So.2d 400 (La.App., 1952); U. S. Realty Sales of Shreveport v. Rhodes, 34 So.2d 523 (La.App., 1948); and White v. Havard, 25 So.2d 108 (La.App., 1946).
We can come to only one conclusion and that is that when plaintiff initially agreed to forego his commission he did so only because the parties agreed that the sale would not be consummated and certainly this evidence no intention on the part of plaintiff to forfeit his rights to a commission if a contract was eventually signed by the parties.
We think clearly applicable here are the provisions of Civil Code Article 1965 which provides:
"The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."
For the above and foregoing reasons the judgment of the district court is reversed and set aside and judgment is rendered herein in favor of the plaintiff and against the defendant in the full and true sum of One Thousand and No/100 ($1,000.00) Dollars together with legal interest thereon from date of judicial demand until paid and for all costs of court.
Reversed and rendered.