BLANCHE, Judge.
Plaintiff, Clayton W. Bennett, a duly licensed real estate broker, filed suit against defendant, Bobby J. Gauthier Contractor, Inc., for a real estate commission on sales of new homes constructed by defendant to Martin S. Hemphill and to Bryan Joseph Gauthier (hereinafter respectively referred to as the “Hemphill sale” and the “Gau-thier sale”). Defendant answered plaintiff’s petition as amended denying the allegations thereof and in particular disputing plaintiff’s version of the alleged contract or agreement existing between the litigants. At the conclusion of the trial the lower court rendered Oral Reasons for Judgment, resolving the contradictions in the testimony in favor of plaintiff with regard to the Hemphill sale but denying plaintiff a commission on the Gauthier sale. In accordance therewith a judgment was rendered, read and signed in favor of plaintiff and against defendant in the principal sum of $1,000, from which judgment defendant perfected this suspensive appeal. Plaintiff answered the appeal requesting that the judgment be amended in accordance with plaintiff’s prayer for relief. We affirm.
The trial judge set forth his findings of fact and reasons for judgment as follows:
“As we see this problem, these parties probably never really had a complete meeting of the mind on just exactly what the dealings were to be as between them. I do believe a preponderance of the evidence is to the effect that both the plaintiff and the defendant understood that on any house owned by the defendant which was to be sold, a $1,-000.00 commission would be paid and, according to Mr. McDowell and the defendant, was to be paid directly to the person making the sale. In the case of Bryan Gauthier, (not related to the defendant) Mr. McDowell sold the house and the defendant paid him the commission. In the case of Hemphill, the question relates to who sold the house. Nobody was paid anything on that sale.
“I think the law is to the effect that once you determine procuring cause or you can show that the initial contact was such that through same a sale was ulti *597 mately consummated then the commission is due. I cite the case of Rolston vs. Buff. [130 So.2d 732 (La.App. 1st Cir. 1961)] I don’t think either of you question the fact that this is the law of Louisiana that the person who was the procuring cause of a sale is entitled to a commission. In trying to assess the evidence on the Hemphill transaction, I believe under the law Mr. Bennett is entitled to a commission on that particular sale; and, from the evidence, as I see it, the sum agreed upon was $1,000.00.
“I cannot in good conscience allow a commission to be paid, or order a commission to be paid, on the other house because I think it was paid and was paid pursuant to Mr. Gauthier’s understanding as to how it would be handled. The Court is going to render judgment in favor of Mr. Bennett and against Mr. Gauthier for the sum of $1,000.00, plus legal interest and costs of Court. Judgment will be signed accordingly.” (Oral Reasons for Judgment, Record, pp. 14, 15)
We are satisfied from our review of the record that the evidence clearly preponderates in favor of the conclusion that an agreement existed between plaintiff and defendant whereby defendant would pay the plaintiff a real estate commission in the sum of $1,000 on each house built by defendant and for which plaintiff procured a purchaser. Defendant’s president and majority, if not sole, stockholder, Bobby J. Gauthier, specifically admitted that if plaintiff “sold” such a house, defendant would pay plaintiff a $1,000 commission therefor. (Record, pp. 27,28, 30,130)
Bobby J. Gauthier testified, however, that it was his understanding that the agreement between defendant and plaintiff required not only the usual functions performed by a real estate broker but the additional requirements that the real estate broker not only “sell” the house but also follow through, process the proposed deal and, in effect, assure its consummation before plaintiff would be entitled to a commission.
It is clear that a real estate brokerage contract need not be in writing, nor does entitlement to a real estate commission necessitate the broker’s having an exclusive listing of the property for sale, Rolston v. Buff, 130 So.2d 732 (La.App. 1st Cir. 1961). In the normal situation all the real estate agent or .broker need show in order to be entitled to receive the commission is that his efforts were the procuring cause of The sale, Rolston v. Buff, cited supra. A real estate broker is considered the procuring cause of a sale and is entitled to a commission if he brings the parties together even though the parties conduct final negotiates themselves and even though the final transaction is consummated at a different price from that procured by the broker, Keating v. Lachney, 216 So.2d 906 (La.App. 1st Cir. 1968). Accordingly, defendant’s contentions with regard to the understanding of its president as to the additional requirements and obligations on the part of plaintiff as testified to by Bobby J. Gauthier before plaintiff would be entitled to a commission, require that defendant carry the burden of proving the existence of such additional obligations, which burden of proof we are satisfied from our review of the record defendant failed to carry.
We are further satisfied that the trial court committed no manifest error in concluding that plaintiff was entitled to the $1,000 real estate broker commission with regard to the Hemphill transaction for the reason that plaintiff was the procuring cause of the ultimate sale. The testimony is clear that the initial contact with Mr. Hemphill was procured by or obtained through plaintiff, whose employee or salesman, Shelby, J. Burns, III, first showed the house to Mr. Hemphill or his wife or both after plaintiff had discussed the matter with Mr. Hemphill.
The record further shows that because plaintiff was out of the state on a certain *598 Saturday when plaintiff had scheduled an appointment with Mr. Hemphill concerning the house, plaintiff requested Mr. Burns to keep the appointment. Inasmuch as Mr. Burns was inexperienced in calculating the appropriate allotment or credit to be given Mr. Hemphill for his old home which was to be taken by defendant in trade, Mr. Burns got in touch with Bobby J. Gauthier, who kept the appointment with Mr. Hemp-hill and who, together with Gary McDowell, drew up a purchase agreement which was signed by Mr. Hemphill. Mr. Gauthier testified that he then turned the matter back over to plaintiff, but this was denied by plaintiff and was not corroborated by the testimony of Mr. Hemphill. On the contrary, Mr. Hemphill significantly testified that he was not instructed by Mr. Gauthier to get back in touch with plaintiff, but instead knew that plaintiff was the person whom he needed to contact because he had started the negotiations and dealings with plaintiff. (Record, p. 53)
Mr. Hemphill testified that although he remained continuously interested in buying the home from the time he signed the first purchase agreement through the execution of the sale (Record, pp. 52, 53), he became disgusted when he was unable to obtain any follow-up thereon either from plaintiff or from Mr. Gauthier, and, in fact, tore up the original purchase agreement and finally advised Mr. Gauthier he would not go through with the deal unless somebody came to discuss it with him. Plaintiff, on the contrary, testified he was satisfied after his last personal conversation with Mr. Hemphill that a firm purchase agreement and a firm deal was in existence and was unaware of any attempts by Mr. Hemphill to get in further touch with him, plaintiff having received no such word from Mr. Hemphill or from his telephone answering service. (Record, p. 69) The evidence shows that Mr. Gauthier did, in fact, prepare and obtain Mr. Hemphill’s signature to a second purchase agreement no more than two weeks subsequent to the date of the first purchase agreement (Record, p. 54), which second purchase agreement significantly reflected a sales price of about $1,000 less than the original purchase agreement. (Record, p. 42)
Considering all the evidence and the law applicable to the case at bar, we are satisfied the Court committed no manifest error in concluding plaintiff was the procuring cause of the ultimate Hemphill sale and was, therefore, entitled to receive from defendant a commission in the sum of $1,000.
We are further satisfied that the trial court committed no manifest error in refusing to award plaintiff any commission in conjunction with the Gauthier sale, which sale was admittedly obtained through the efforts of Gary McDowell rather than plaintiff. Plaintiff argues that despite the fact that he personally did not obtain the purchaser, nevertheless, Gary McDowell was his real estate salesman and as such was not entitled to accept the commission from defendant directly, Gary McDowell not himself being a licensed real estate broker, in accordance with Louisiana Revised Statute 37:1451.[1] Plaintiff argues that inasmuch as the real estate salesman could not legally accept the commission, it follows that payment of the commission by defendant to the salesman instead of to plaintiff as the licensed real estate broker, did not suffice to discharge the obligation of properly paying the commission. Plaintiff’s argument is without merit for the reason that the cited statute seeks to regulate conduct of real estate salesmen who are not licensed real estate brokers and does not by its terms impose any sanctions upon the payor of the commission. Plaintiff’s complaint in this regard would have to be directed to Gary McDowell as it involves the respective rights and obligations arising out of that particular alleged em *599 ployer-employee relationship. We find no error committed by the trial court in concluding plaintiff failed to prove his right to or interest in commissions on sales procured by persons other than himself or in the trial court’s acceptance of the testimony of Bobby J. Gauthier and Gary McDowell to the effect that the commission was to be paid directly to the particular salesman who “sold” each particular house or procured a buyer therefor.
For the foregoing reasons, the judgment of the trial court is affirmed, with all costs of this appeal assessed to defendant.
Judgment affirmed.

. This statute reads as follows:
“No real estate salesman shall accept a commission or valuable consideration for the performance of any act herein specified from any person, except his employer who is a licensed real estate broker.”