PICKETT, Judge.
Paul M. Gement, Jr., Joseph DeGrado, Jr., Wade Trepagnier, and Deville, Inc., a real estate agency, instituted this suit for a real estate commission, in the sum of $28,750.00, with interest and costs, allegedly due and owing by the defendants-appellants, Thomas L. Doby, Jr. and his insurer, Western Surety Company.
The plaintiffs allege that through two of petitioners, Paul M. Gement, Jr., and Joseph DeGrado, Jr., they entered into an agreement with Thomas L. Doby, Jr. to work jointly to sell certain acreage known as the Fingers property, located on the Tchefuncta River in St. Tammany Parish, Louisiana. They alleged that the real estate commission realized from the sale of said property was to be divided equally between plaintiffs and the defendant, Thomas L. Doby, Jr. As a result of the joint efforts of the plaintiffs and defendant Doby, the Fingers property was in fact sold for the sum of $575,000.00, and that the net real estate commission in the sum of $57,-500.00 was paid to defendant, Thomas L. Doby, Jr., and that plaintiffs are entitled to receive one-half of said sum, or $28,-750.00. The defendants, in their answer, admitted that defendant, Thomas L. Doby, Jr., with the assistance of Irma R. Mel-laney, licensed real estate brokers, sold the Fingers property, and that the defendant Doby had received a commission of $57,-500.00 for the sale of said real estate, and that he had divided said commission with the said Irma R. Mellaney. Defendants further admitted the issuance of a Surety Bond on defendant, T. L. Doby, Jr.; but denied any indebtedness to plaintiffs. From a judgment in favor of the plaintiffs for the sum of $28,750.00 with legal *254 interest from date of judicial demand until paid and all costs of suit, the defendants have appealed suspensively.
The plaintiffs contend that they are entitled to the real estate commission claimed by them because they were the “procuring cause” in finding a purchaser for a certain tract of land containing 220.67 acres situated along, and facing the Tchefuncta River in St. Tammany Parish, Louisiana, owned by Hyman E. Finger and others. The plaintiffs claim it was through their efforts that Mark C. Smith, Jr., was induced to buy the said acreage, hereinafter some times referred to as the Fingers property. On the other hand, the defendants contend that defendant, Thomas L. Doby, Jr., and his associates did all the work in consummating the sale, and that the plaintiffs are not entitled to any commission.
It is admitted by all the parties concerned that Mark C. Smith, Jr., purchased the Fingers property for which he paid $575,-000.00. It is further admitted that Mr. Smith actually paid the defendant, Thomas L. Doby, Jr., $57,500.00 as a commission.
The plaintiff, Paul M. Gement, Jr., said that in the course of his negotiations with Mark C. Smith, Jr., concerning other property, he learned that Mr. Smith was interested in acquiring additional water front property such as the Fingers property. Mr. Gement, then, told Mr. Smith about the Fingers property. He drove over the said property with Mr. Smith, and walked over all of it, except the swamp land, with Mr. Smith and his wife. Mr. Gement, also, took Mr. Smith and his wife to view the property from the Tchefuncta River. After seeing the property, Mr. Smith expressed his desire to buy it; and he asked the plaintiffs to represent him in purchasing it. Knowing that Thomas L. Doby, Jr., a realtor, was a friend of the Finger family, plaintiff, Gement, consulted him about assisting plaintiffs in the acquisition of the Fingers property. Mr. Doby agreed to undertake securing the property for Mr. Smith. Mr. Gement then informed Mr. Smith of the arrangements that he had made and suggested he communicate directly with Mr. Doby in order to facilitate the matter. However, Gement testified that he remained in close touch with Smith and Doby during the negotiations, and conferred with them from time to time concerning the purchase of the property.
Mark C. Smith, Jr., the purchaser of the Fingers property, was ill and under the care of a doctor when this case was tried, and hence could not testify. But his depositions which had been previously taken were introduced in evidence. Mr. Smith testified that Paul M. Gement, Jr., first took him to see the Fingers property, and that he asked the plaintiffs, Gement and DeGrado, to see if the property could be purchased. The testimony of Mr. Smith is quite lengthy, but after an examination of that evidence we fully agree with the following findings of the trial judge:
“The Court is firmly of the opinion that the testimony of Mr. Mark Smith, Jr. (taken by deposition due to his illness) is perhaps in the Court’s opinion the most important testimony adduced in this trial. He is the man who did business both with the plaintiffs and defendant in this lawsuit and he is the man who bought this property for a purchase price of $575,000.00. Beginning on page 7, line 15 of Mr. Smith’s testimony the questions asked him and answers by him hereinabove quoted are very material to the issues in this lawsuit. Mr. Smith testified that plaintiffs Gement and De-Grado were the first to tell him about this property and were the first to take him upon it. Mr. Smith further testified that there were conversations and discussions about this property between him and Gement and/or DeGrado several months before the defendant Doby was brought into the deal. He further testified that until Mr. Doby was brought into the deal he had only met Mr. Doby one time socially. Mr. Smith further testified that Doby was brought into the deal *255 voluntarily by Gement because it was thought that Doby had access to the Fingers family and could be instrumental in inducing them to sell this property. Mr. Smith further testified that after Mr. Doby was brought into the deal that the purchase of this property was constantly discussed with Mr. Gement and Mr. De-Grado. Mr. Smith testified that Mr. Gement told him that he was going to bring Doby into the deal and that the very next day Doby called him.”
An examination of Mr. Smith’s evidence shows conclusively that plaintiffs had sold him on the idea of purchasing the Fingers property, and that defendant, Thomas L. Doby, Jr., was brought into the transaction for the purpose of inducing the owners to sell the property. When Mr. Smith was asked if he considered Mr. Doby as his sole agent and that Gement and DeGrado were not involved, he answered:
“No, I didn’t. Well, legally, of course, he was the, he was acting for us. It was simply an understanding I had in the beginning, no matter how you phrase it, that these two realtors, these two real estate firms, were to share in the commission. As to the specific amount, I do not know how much and I was always led to believe that it was far better for Doby to take up the ball with the Fingers people because he was a friend of theirs, that he could see it to a conclusion.”
The testimony of Mrs. Julia Smith, the wife of Mark C. Smith, Jr., corroborates that of her husband. She testified that she and her husband had never heard of the Fingers property until Mr. Gement and Mr. DeGrado told them about it, and showed it to them. She said they drove and walked over the property; and that Mr. Gement took them to view the property from the river. She said, also, that it was her understanding that Mr. Gement brought Mr. Doby into the transaction because it was thought he had contact with the owners of the Fingers property, and that as the representative of the owners he could prevail on them to sell the property.
An examination of the testimony of the defendant, Thomas L. Doby, Jr., discloses that he was not only evasive in a number of instances, but, as observed by the trial judge, there are serious inconsistencies in his testimony. For example, when Mr. Doby was asked in the trial of this case if Mr. Smith had said that Mr. Gement had already discussed the Fingers property with him, he answered No. But when he was confronted with his answer on Pages 9 and 10 of his deposition that Mr. Smith had said that he had discussed the Fingers property with Paul Gement, he was unable to explain his answer, and replied simply: “That’s what has confused me.” The trial judge in his written reasons for judgment pointed out the following inconsistency in Mr. Doby’s testimony:
“Mr. Doby on cross examination at the trial testified that the first time he ever knew that Mr. Gement wanted one half of the commission from the sale of this property was when this suit was filed. This testimony does not jibe with his deposition given on the 6th day of September, 1968, on page 11, line 15 that Mr. Gement was to get part of the commission.”
Furthermore Mr. Doby testified that the first he knew that Mr. Gement wanted one half of the commission resulting from the sale of the Fingers property was when this suit was filed. However, Mrs. Julia Smith testified that her husband, Mark C. Smith, Jr., had discussed with Doby the sale of the Fingers property at a party given at La-Place, on or about April 16, 1968, and that Doby then stated that Gement and De-Grado were not entitled to one half of the Commission on the sale of the Fingers property because they did not do one half of the work. Mr. Doby did admit that Mr. Gement was to get some of the commission. *256 On page 11, line 13 of his deposition, Mr. Doby said:
“Q. No, I didn’t say listing, that you would work with him on the sale of the property.
A. Mr. Gement was to get part of the commission.
Q. In other words, there was an agreement that he was to get a part of the commission ?
A. If he sold the property.”
We believe the evidence clearly shows that the plaintiffs, particularly Mr. Gement and Mr. DeGrado, induced the purchaser, Mark C. Smith, Jr., to buy the Fingers property. Mr. Doby was brought into the deal for the sole purpose of inducing the Fingers family to sell the property. In other words, the plaintiffs found Mr. Smith, the purchaser, and prevailed upon him to buy the property.
In Womack Agencies v. Fisher, La.App., 86 So.2d 732, the court defined the procuring cause of a sale as follows:
“It seems to us undeniable that plaintiff’s active efforts were a procuring cause of this sale. ‘Procuring cause’ refers to the efforts of a broker in introducing, producing, finding or interesting a purchaser, and means that negotiations which eventually lead to a sale, must be the result of some active effort of the broker. Lehmann v. Howard, La.App., 49 So.2d 453, 454.” 34 Words & Phrases (Pocket Part), Verbo “Procuring Cause.”
The definition of “procuring cause” as defined in the Womack Agencies case, was adopted in Munson v. Alello, La.App., 199 So.2d 577, in which the court said:
“As stated in the Womack Agencies case, supra, ‘procuring cause’ refers to the efforts of a broker in introducing, producing, finding, or interesting a purchaser, and means that negotiations that eventually lead to a sale must be the result of some active effort of the broker.”
The “procuring cause” is defined in 12 C.J.S. Brokers § 91, page 208 as follows:
“As used in that branch of the law relating to brokers’ commissions, the terms ‘procuring cause,’ ‘efficient cause,’ and ‘proximate cause’ have substantially, if not quite, the same meaning and are often used interchangeably; they refer to a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal’s property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing, and able to buy on the principal’s terms.”
The Trial Judge found as a fact that plaintiffs were the procuring cause that resulted in the purchase of the Fingers property by Mark C. Smith, Jr., and as such entitled to one half of the commission paid to defendant, Thomas L. Doby, Jr. We agree with the conclusion reached by the Trial Judge that the plaintiffs, through the efforts of Gement and DeGrado, were the procuring cause that resulted in the sale of the Fingers property. Having concluded that plaintiffs were the procuring cause that resulted in the sale of the Fingers property, it necessarily follows that plaintiffs are entitled to a commission. In Munson v. Aiello, supra, this court said:
“A real estate broker whose efforts were the ‘procuring cause’ of a sale is entitled to be paid his commission, even though the sale is not consummated until after the expiration of the contract of agency. Bullis & Thomas v. Calvert, 162 La. 378, 110 So. 621 (1926); Lehmann v. Howard, 49 So.2d 453 (La.App. 2 Cir. 1950); Womack Agencies, Inc. v. Fisher, 86 So.2d 732 (La.App. 1 Cir. *257 1956); Foulks v. Richardson, 87 So.2d 335 (La.App. 1 Cir. 1956).”
In the more recent case of Keating v. Lachney, La.App., 216 So.2d 906, this court said:
“It has also been well established that a real estate broker is entitled to a commission if he is the procuring cause of the sale even though the transaction is consummated by the parties at a different price from that procured by the broker. Kaufman Agency v. Viccellio, 174 So. 709 (La.App.1937).
“A real estate broker is considered the procuring cause of a sale and is entitled to a commission if he brings the parties together even though the parties conduct the final negotiations themselves and even though the broker does not have a listing or exclusive agency agreement. Searcy v. Jacobs, 151 So.2d 166 (La.App.1963); Rolston v. Buff, 130 So.2d 732 (La.App.1961); Veters v. Krushevski, 100 So.2d 93 (La.App.1958); Wright v. Monsour, 86 So.2d 586 (La.App.1956); Dew v. Hunter, 66 So.2d 400 (La.App.1952); United States Realty Sales of Shreveport v. Rhodes, 34 So.2d 523 (La.App.1948); and White v. Havard, 25 So.2d 108 (La.App.1946).”
The defendant, Doby, on page 11, line 15 of his deposition, filed in evidence as Exhibit P-6, said: “Mr. Gement was to get part of the commission.” However, Mr. Doby denied that there was any agreement as to what the commission should be, and he unilaterally decided it should be $7,500.00. Ernest J. Prieto, Mrs. Mary Fallon and Albert J. Vallon, all realtors, testified that, in the absence of an agreement to the contrary, the custom among realtors is that: a commission is divided equally between the realtor or broker representing the seller and the realtor producing the buyer. The defendants’ own witness, Roy Cooper, a realtor, testified under cross examination that it is a recognized custom among realtors that in the absence of an agreement if one realtor has a listing and another realtor produces a purchaser for the property, the commission is divided equally between the realtors regardless of the amount of work between them. In the case of Craton v. Miller, La. App., 47 So.2d 342, the court held: “If there is no specific agreement on the subject, custom will prevail in case of controversy.” The evidence in this case clearly shows that it is the custom among realtors to divide the commission equally between the realtor representing the seller and the realtor producing the buyer, absent an agreement to the contrary. The fact that Mr. Doby associated Mrs. Irma Mel-laney, another realtor, with him to assist him in inducing the Finger family to sell the property in no way relieves him of his obligation to the plaintiffs. He sought and enlisted Mrs. Mellaney’s assistance without the advice and consent of the plaintiffs.
After a careful review of the record, and considering the law and jurisprudence applicable to the facts in this case, we agree with the finding of the trial judge that the plaintiffs were the procuring cause that resulted in the sale of the Fingers property to Mark C. Smith, Jr., and that as such, they are entitled to one half of the commission paid by the purchaser, that is the sum of $28,750.00.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to the defendants-appellants.
Affirmed.