Gerardeen M. SNYDER as the Executrix of the Succession of Eric Snyder and Charles Keenan, Plaintiffs–Appellants,

and

Allen Samuels, Inc.,
Intervenor–Appellant,

v.

CHAMPION REALTY CORPORATION,
Defendant–Appellee.

No. 79–2514.

United States Court of Appeals,
Fifth Circuit.

Unit A

Dec. 5, 1980.

Rehearing Denied Dec. 31, 1980.

William F. Wessel, Windhorst, Heisler, De Laup & Wysocki, Frederick P. Heisler, New Orleans, La., for Snyder, et al.

Reynolds, Nelson & Theriot, Charles W. Nelson, Jr., New Orleans, La., for defendant··appellee.

Before WISDOM, GARZA and REAVLEY, Circuit Judges.

WISDOM, Circuit Judge:

The issue in this diversity case is whether the plaintiffs, real estate brokers, are entitled under Louisiana law to recover a commission from the defendant. We agree with the district court that they are not, and we affirm the grant of summary judgment for the defendant.

The plaintiffs in this case are Eric Snyder, Allen Samuels, Inc. ("Samuels"), and Charles Keenan, three real estate brokers.[1]

---

1. Eric Snyder died during pendency of the case in the district court. Gerardeen Snyder was substituted as his Executrix.

The defendant is Champion Realty Corp. ("Champion"). Some time in 1974 Champion engaged Snyder and Samuels as non-exclusive agents for the sale of a large tract of land in Louisiana known as the Garyville tract. Champion offered the land for a minimum cash price of $125 an acre, or a total of $3,950,000, with Champion reserving all oil and gas rights. Champion agreed to pay any excess obtained over $125 an acre to the brokers as their commission. Champion also agreed to "look at" any other deals that the brokers might arrange. Snyder and Samuels in turn obtained Keenan's assistance and agreed to split the commission with him.

The brokers introduced Champion to a buyer, Brian Investments, Ltd. ("Brian"), willing to pay $150 an acre. The parties reached an agreement and put it into two documents on October 4, 1974. Champion and Brian signed an Agreement to Buy and Sell, calling for sale of the entire tract at $125 an acre, cash, with Champion reserving all gas and oil rights. Champion acknowledged the brokers' role in arranging the sale but did not promise to pay a commission. At the same time, Brian and the brokers signed a Commission Agreement for $25 an acre.

Champion twice tendered title to Brian (on March 27 and April 28, 1975). Brian defaulted both times. Brian has never performed either of the October 4 agreements.

Sometime after the second default Champion and Brian opened direct negotiations. As a result, on May 4, 1976, they entered into a new agreement. Again the price was $125 an acre, but Champion reserved only half of the oil and gas rights. Champion also promised to pay a commission of $7.50 an acre to a broker to be designated by Brian. This sale took place on October 1, 1976, on a credit basis. Brian later designated itself as the broker to collect the $7.50 commission. The agreement made no provision for payment of any commission to the plaintiffs, nor were they notified of or invited to participate in the negotiations or agreement.

The plaintiffs sued Champion (but not Brian) in Louisiana state court; Champion removed the action to federal district court. The parties made extensive stipulations of fact. On cross-motions for summary judgment, the district court granted judgment for Champion.

The plaintiffs concede that they cannot recover from Champion in contract on the original brokerage agreement. Under that agreement, Champion's liability for any commission was subject to the condition precedent that the sale price exceed the stated net price of $125 an acre. The plaintiffs brought in a buyer willing to pay $150 an acre, but they could not consummate a sale for any such amount.

 Instead, the plaintiffs base their claim on a theory of unjust enrichment.[2] The Louisiana courts have often invoked such a theory in proper circumstances to award equitable commissions to real estate brokers. The general rule is that when a broker brings a buyer and seller together, he is entitled to a commission on the sale even though (1) the sale takes place after the termination of the broker's agency

**2.** The doctrine of unjust enrichment came from Roman law, flourished in France, had an unfriendly reception in England, is well developed in the common law states and, according to the Louisiana Supreme Court, emerged in Louisiana as early as 1814 in *Meunier v. Duperron,* 3 Mart. (O.S.) 285. *Minyard v. Curtis Products, Inc.,* 1967, 251 La. 624, 205 So.2d 422. *Minyard,* the leading case in Louisiana, states that the civil law action *de in rem verso* is an action for unjust enrichment. 205 So.2d at 427. The *negotiorum gestio* action offers another avenue. *See* Comment, *Negotiorum Gestio* in Louisiana, 7 Tul.L.Rev. 253 (1933). There is no specific codal article on the subject, although the action could be based on three articles.

Article 21, which has no corresponding article in the French or Quebec codes, provides, in part, that "In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity". Article 1965, defining equity, states, in part, that it rests "on the moral maxim of the law that no one ought to enrich himself at the expense of another". Article 2294, dealing with the concept of quasi-contract, furnishes a third basis for the unjustified enrichment doctrine. *See* Comment, *Actio De In Rem Verso* in Louisiana: Minyard v. Curtis Products, Inc., 43 Tul.L.Rev. 263 (1969). *See generally* Nicholas, Unjustified Enrichment in Civil Law, Part I, 36 Tul.L.Rev. 603 (1962); Part II, 37 Tul.L.Rev. 49 (1962).

agreement; (2) the buyer and seller negotiate the deal themselves in the broker's absence; (3) the sale price is less than that originally asked by the seller or offered by the buyer; or (4) there is no actual fraud or collusion to deprive the broker of his commission. *J. R. Grand Agency, Inc. v. Staring*, 1924, 156 La. 1094, 101 So. 723; *Grace Realty Co. v. Peytavin Planting Co.*, 1924, 156 La. 93, 100 So. 62; *Gottschalk v. Jennings*, 1846, 1 La.Ann. 5; *Sleet v. Gray*, La.App. 1977, 351 So.2d 286; *Hamberlin v. Bourgeois*, La.App. 1973, 289 So.2d 358; *Slimer v. White*, La.App. 1973, 275 So.2d 468; *Keating v. Lachney*, La.App. 1968, 216 So.2d 906; *Saturn Realty, Inc. v. Muller*, La.App. 1967, 196 So.2d 321.

Assuming that the plaintiffs in this case were instrumental in bringing about this sale,[3] however, it does not follow from these authorities that they may recover in unjust enrichment against Champion. The cases cited all differ from this case in one crucial respect: in every instance there was a promise[4] to pay either a flat sum or a stated percentage of the sale price. In some cases, as in this case, the seller named a minimum net price. But in no case of recovery by a broker or real estate agent was the bargain structured so that the existence and amount of a commission depended directly on the receipt of a sale price exceeding the stated minimum. To restate the distinction: in all the cited cases the sellers were liable for some commission if they sold at any price to buyers procured by the plaintiffs.[5] Those sellers tried to evade that liability by discharging the brokers or by dealing directly with the buyers behind the brokers' backs. Here, in contrast, the seller agreed to pay a commission only if the brokers brought about a sale for more than $125 an acre. No such sale occurred; Champion received a net price of $117.50 an acre, gave credit instead of receiving cash, and was able to retain only half of the mineral rights. A party is not unjustly enriched because it "evades" a liability that never existed.

The plaintiffs assert that there is a fact issue as to whether Champion committed actual fraud, but they do not draw our attention to any facts that would support the accusation. A bare, conclusory assertion cannot defeat a motion for summary judgment.

The plaintiffs, somewhat uncertain how to pigeon–hole their claim, argue that, despite the terms of the brokerage contract, Champion is guilty of "legal fault", a kind of constructive bad faith, under the civilian doctrine of *culpa in contrahendo*. The doctrine is, in general terms, the civilian equivalent of the common law concept of promissory estoppel. It is used as a basis for

3. To recover on an unjust enrichment theory in Louisiana, a broker must be the "procuring cause" of the final sale. Ordinarily a broker is the procuring cause if he brings the parties together. *E. g., Keating*, 216 So.2d at 909–10. But if the parties fail to make a sale, part ways, and then come together again on their own initiative after a lapse of time, the broker does not earn a commission on the sale if he has no hand in the renewed dealings. *Ford v. Shaffer*, 1918, 143 La. 635, 79 So. 172; *Cramer v. Guercio*, La.App. 1976, 331 So.2d 550; *Turner v. Swann*, 1919, 11 La.App. 689, 124 So. 717. Here there is a factual dispute as to when Brian and Champion resumed negotiations and whether these were a mere continuation of the earlier negotiations or a new start. This alone is enough to defeat the plaintiffs' motion for summary judgment, since it creates a genuine issue as to a fact material to their right to recover. Fed.R.Civ.P. 56(c). We nevertheless affirm summary judgment for Champion because we find that it is entitled to judgment as a matter of law even if the plaintiffs were the procuring cause of the sale.

4. In some cases there was no express agreement as to the amount of the brokers' compensation. Apparently the courts assumed an implied contract to pay the prevailing percentage rate on realty brokerage agreements.

5. In the case of percentage commissions, of course, the recovery is the agreed percentage of the actual sale price, even if that price is less than the original asking price. Where the brokerage agreement calls for a commission stated in dollars on a sale for a stated minimum, and the sale takes place at a lower price, the rule is less clear. In *Keating* the appellate court awarded the full agreed amount, 216 So.2d at 907, 910. In *Grace Realty*, though, the supreme court in dictum suggested a pro rata share, 100 So. at 63. In any case, the point is that in all cases there existed *some* liability for a commission despite sale at below the stated minimum.

compensating one party for his expenses incurred in reliance on another party's offer to form a unilateral contract where that offer is withdrawn before acceptance. *See* Comment, *Culpa in Contrahendo*, in German, French and Louisiana Law, 15 Tul.L. Rev. 87 (1940). It has nothing to do with this case.

We recognize that actual fraud is not a necessary element to a broker's recovery for unjust enrichment. Nevertheless, we cannot agree that, under the Louisiana cases we have cited above, the mere act of selling to the broker's buyer without cutting in the broker establishes bad faith. Rather, when the cases speak of bad faith, they refer to some active interference with the brokers' ability to earn their contractual commissions. *See J. R. Grand Agency*, 101 So. at 724; *Grace Realty*, 100 So. at 63; *Gottschalk*, 1 La.Ann. at 6–7. Here the plaintiffs had let the matter drop after Brian's defaults; there was no continued effort with which Champion could have interfered. Nor do we agree, in the circumstances of this case, that Champion's failure to notify the plaintiffs of the new negotiations establishes fault. Assuming that Champion had any duty to do so,[6] the plaintiffs suffered no harm from the omission. If Champion could not persuade Brian to pay Champion's original stated minimum net, it is unlikely that the plaintiffs could have persuaded Brian to pay a price above that minimum.

The plaintiffs complain that this result allows a seller, faced with a balky buyer, to make "price concessions" by bargaining away the broker's commission. That, however, is an inherent feature of the type of brokerage agreement the plaintiffs made. They agreed to accept only the excess money as their commission. They likewise chose to present Brian as a customer; thereby they took the risk that Brian would back away from its promise to pay $150 an acre. To protect their commission they could have extracted a promise from Brian (as in fact they did), or they could have found another, more reliable buyer (as they did not). The plaintiffs were entitled to expect that Champion would not sell at

$125 if they produced a buyer willing and able to buy at $150. They were not entitled to expect such abstinence if they did not produce such a prospect. Perhaps it is not the plaintiffs' fault that the sale they put together did not go through, but certainly it is not Champion's fault.

Since we find that Champion received no unjust enrichment at the plaintiffs' expense, we conclude that Champion is entitled to judgment as a matter of law. We therefore AFFIRM the judgment of the district court.

---

**6.** *See Grace Realty*, 100 So. at 64.